In re GILCHRIST COMPANY, Debtor.

**In proceedings for Arrangement under Chapter XI of the Bankruptcy Act.**

**No. 74–836.**

United States District Court,
E. D. Pennsylvania.

March 10, 1976.

Kahn & Kahn, St. Louis, Mo., Blank, Rome, Klaus & Comisky, Philadelphia, Pa., for petitioner.

Modell, Pincus, Hahn & Reich, Philadelphia, Pa., for respondent.

## MEMORANDUM TO ORDER ENTERED FEBRUARY 26, 1976

CLIFFORD SCOTT GREEN, District Judge.

Presently pending before the Court are the appeals of several creditors of the Gilchrist Company (Debtor) from an order of the bankruptcy judge confirming a Plan of Arrangement. For the reasons set forth in the opinion of the bankruptcy judge and for the additional reasons set forth in this memorandum, we have affirmed the aforesaid order of the bankruptcy judge.

## I. FACTS

The Gilchrist Company is a corporation which operates ten retail stores in and around Boston, Mass. The Debtor has been in existence more than 75 years. It is a publicly owned corporation the stock of which is held primarily by Uni-Shield International Corporation. Uni-Shield International Corporation is a holding company and parent corporation of Debtor.

Debtor filed for an Arrangement with its unsecured creditors pursuant to Chapter XI of the Bankruptcy Act. Subsequently, Debtor proposed to its unsecured creditors a Plan of Arrangement pursuant to which said creditors would receive 50% of the proven claims in the form of 42.5% in cash and the other 7.5% in three notes, each for 2.5%, payable October 1, 1975, February 1, 1976 and June 1, of 1976. The notes were to be guaranteed by an irrevocable letter of credit by First Pennsylvania Bank. The Plan related to a group of more than 1200 creditors who approved the Plan by the requisite majority in number and amount. *See,* Bankruptcy Act § 362.

The First Meeting of Creditors was held on April 17, 1975 and continued without hearing until the requisite number and amount of acceptances by creditors were achieved. On August 12, 1975, the bankruptcy judge gave notice of a Final Meeting of Creditors to be held on August 25, 1975, *inter alia,* "to hear and consider confirmation of the Plan heretofore accepted in writing by a majority in number and amount of unsecured creditors whose proofs of claim have been filed". One objecting creditor, National Union Electric Corporation, filed a complaint objecting to confirmation on August 22, 1975. At the hearing on August 25, 1975, the bankruptcy judge gave the objecting creditor until August 29, 1975 to take appropriate discovery and otherwise prepare for an evidentiary hearing on confirmation set for that time. In the interim days between August 25 and

August 29, the objecting creditor took numerous depositions, including those of Donald E. Stamm, of Credit Exchange, Inc., Secretary to the Creditors' Committee; John J. Ginley, of First Pennsylvania Bank, which was to fund the Plan; Harry S. Sylk, Receiver; Melvin Gold, Controller of Uni-Shield International Corporation; and Sidney J. Golub, Vice President of the Debtor.

At the evidentiary hearing on August 29, 1975, the objecting creditor, National Union Electric Corporation, presented an amended complaint objecting to confirmation. Also, a complaint objecting to confirmation has been filed by four other creditors: Genesco, Inc.; Levi Strauss & Co.; Devon Apparel, Division of Interco, Inc.; and Territory Financial Corporation.

At the August 29, 1975 evidentiary hearing, the objecting creditors asked the bankruptcy judge to deny confirmation based upon the depositions and exhibits attached thereto and to take judicial notice of the remainder of the record before the bankruptcy judge in this matter, and also before the bankruptcy judge in related bankruptcy proceedings of the Uni-Shield International Corporation and other companies affiliated with it. Although Rule 201 of the Federal Rules of Evidence, on which the objecting creditors rely, does not require the bankruptcy judge to take judicial notice on as broad a scope as requested by the objecting creditors[1], it is clear that the bankruptcy judge did consider all of the records filed in not only this action but in the action of affiliated companies. In addition, it is clear that the bankruptcy judge considered all of the depositions filed in assenting to the objecting creditors' request that the action be treated as one for summary judgment.

The bankruptcy judge denied the motion for summary judgment on the ground that there remained unresolved genuine issues as to material facts; and

the record fully supports this determination.

■ The bankruptcy judge then considered the objecting creditors' amended complaints as on trial. With respect to the admissibility of evidence offered during this aspect of the proceeding, the bankruptcy judge found that "the depositions offered into evidence by the objecting creditors, except the deposition of the executive vice-president of the Debtor [Mr. Golub], were inadmissible under Rule 32(a) of the Federal Rules of Civ. Procedure." (Conclusion of Law No. 4). This determination by the bankruptcy judge is clearly supported by the law; neither unavailability of the non-party witnesses nor any other basis was shown to justify the admission of the non-party discovery depositions. *See,* F.R.Civ.P., Rule 32(a).

During the trial, the objecting creditors did not call any witnesses and of the depositions offered by them, only that of Mr. Golub was determined to be admissible. The Debtor offered into evidence the records of the notes of testimony of the April 17, 1975 First Meeting of Creditors in addition to an upgraded Plan of Arrangement which provides:

> General unsecured claims shall be settled and satisfied by the payment to the holders thereof of 50% of their allowed claims as follows: 50% in cash at the time of confirmation.

Thus, the Plan of Arrangement confirmed by the bankruptcy judge provides for a 50% cash payment to the unsecured creditors without any part thereof being deferred and secured by notes.

The instant appeal is from the confirmation of the upgraded Plan. On February 26, 1976, we entered an order, based upon our review of the trial record, affirming the bankruptcy judge's order of confirmation. However, in considering the bankruptcy judge's determination concerning summary judgment we had occasion to consider all of the

---

1. As to the requirements for taking judicial notice, *see,* in addition to Rule 201, *Govern-* *ment of the Virgin Islands v. Gereau,* 523 F.2d 140, 147 (3rd Cir. 1975).

depositions offered by the creditors and are convinced that even if the excluded depositions were part of the trial record, an affirmance of the order of the bankruptcy judge would be required.

## II. QUESTIONS PRESENTED ON APPEAL

The bankruptcy judge's order was based upon his determination that: (1) the modified Plan constituted an upgrading of the original Plan (Bankruptcy Act § 363); (2) the Plan, as modified, had been accepted in writing by the requisite creditors in number and amount (Bankruptcy Act § 362); (3) the Plan, as modified, was proposed and its acceptance procured in good faith, and not by any means, promises, or acts forbidden by law (Bankruptcy Act § 366(4)); (4) the provisions of Chapter XI have been complied with (Bankruptcy Act § 366(1)); (5) the Plan, as modified, is in the best interest of the creditors and is feasible (Bankruptcy Act § 366(2)); and (6) the Debtor has not been guilty of any of the acts or failed to perform any of the duties which would be a bar to the discharge of a bankrupt (Bankruptcy Act § 366(3)).

The objecting creditors contend (1) the Debtor's Plan is not in the best interests of creditors, (2) the Debtor has been guilty of acts which would be a bar to the discharge of a bankrupt, (3) the solicitation of acceptances of the proposed Plan violated the letter and spirit of both the Securities Act of 1933 and the Securities Exchange Act of 1934, and (4) the proposed Arrangement was not accepted in good faith. A number of other contentions, some of which were not raised below, were offered by the objecting creditors at oral argument and in their briefs in support of these basic contentions.

## III. STANDARD OF REVIEW

We have considered all of the contentions raised by the objecting creditors along with the supporting evidence before the bankruptcy judge in light of the standard of review to which we are bound. The standard of review is set forth in Rule 810: "the judge shall accept . . . [the bankruptcy judge's] findings of fact unless clearly erroneous". Of course, the "clearly erroneous" standard does not apply to questions of law. *See, In Re Meade Land and Development Co., Inc., Eastgate Enterprises, Inc.*, 527 F.2d 280, 282–283 Slip Opinion at 2–3 (3rd Cir. Opinion Filed, December 17, 1975); 2A Collier ¶ 39.28 at 1532–33. Thus, where the question presented is solely one of law, no presumption of correctness applies. The bankruptcy judge's legal conclusions, therefore, may not be approved without our independent determination of the legal questions. 2A Collier ¶ 39.28 at 1532–33.

Finally, our review is limited to the record before the bankruptcy judge; and, consequently, "no notice may be taken of the additional allegations of fact made in the District Court on oral argument and in briefs". *Id.*, at 1531–32, n. 7. Of course, we are not barred from considering any issue presented by the record, even though it was not discussed by or before the bankruptcy judge below. *Id.*, at 1531.

## IV. DISCUSSION

A.

The objecting creditors' first contention is that the Plan of Arrangement is not in the best interest of the creditors [2], because the bankruptcy judge failed to exercise an independent and informed judgment in making his determination under § 366(2) of the Act. This

---

2. The requirement that the Plan be in the best interest of the creditors (§ 366(2) of the Act) is "broadly interpreted to require a comparison between what creditors would receive under the composition offer and what they would receive in liquidation of the estate. Where the composition offer would pay creditors considerably less than they might reasonably expect to realize in liquidation, the composition under [§ 366(2)] was not for the best interests of creditors." 9 Collier ¶ 9.17, at 281 (cases omitted).

contention is primarily based on the allegation of the objecting creditors that the Debtor failed to meet its burden of satisfying the bankruptcy judge, based on the evidence, that the Plan of Arrangement was in the best interest of the creditors in that the Debtor failed to produce witnesses, file depositions or affidavits at the August 29, 1975 evidentiary hearing on confirmation. The record clearly shows that the Debtor offered into evidence at the August 29, 1975 hearing the notes of testimony of the April 17, 1975 First Meeting of Creditors and the upgraded Plan of Arrangement; of course, the bankruptcy judge could and did rely upon the deposition of Mr. Golub, Debtor's executive vice president and treasurer, offered into evidence by the objecting creditors. Thus, the evidence produced by the parties was sufficient to enable the bankruptcy judge to be satisfied, as he was, that Debtor met its burden of proof. *See*, 9 Collier ¶ 29.-17.

■ In connection with the "best interest" test, the objecting creditors contend that the accounting data contained in some of the financial statements were not the most current and that the bankruptcy judge made no mention of an alleged readjustment from last-in first-out (LIFO) to first-in first-out (FIFO) method of inventory valuation as of June 28, 1975, both of which contentions are based upon Exhibit P–5 attached to the deposition of Mr. Harry S. Sylk, Receiver.

These contentions essentially relate to the favorable condition in which the Debtor may find itself should it survive after confirmation of the Plan of Arrangement. The bankruptcy judge considered these factors in juxtaposition to liquidation value; and the evidence supports his conclusion that the creditors will receive more under the plan than in liquidation.

■ Also, in connection with the "best interest" test, the objecting creditors point out that no physical inventory was taken. This fact is clearly shown in the record, but it is also clear that the bankruptcy judge's determination that the lack of a physical inventory, which was never requested by any of the appellants until the instant appeal, would not cause injustice to or militate against the best interest of the creditors was correct and not clearly erroneous.

B.

■ The objecting creditors next contend that the bankruptcy judge's findings of fact as to the requisite majority of creditors accepting the Plan was clearly erroneous. In support of this general contention, the objecting creditors raise specific arguments which we find to be without substance and engendered by a misreading of the transcripts of evidence. First, they contend that the acceptances placed via telegram, which were approximately 13 of the more than 1200 eligible creditors, did not comply with Bankruptcy Rule 11–37(b)[3] in that the transcript of the First Meeting of Creditors is completely devoid of a finding as to the sufficiency of the telegrams. The transcript shows that there was much discussion as to the nature and legality of the telegrams. *See*, Record of Appeals, at 166–171. We agree with the bankruptcy judge that a telegram complies with the requirements of Rule 11–37.

■ Second, the objecting creditors suggest that the telegram acceptances were not allowed before the conclusion of the First Meeting of Creditors, and thus cannot be counted in determining the requisite acceptances. The transcript of the meeting clearly shows that the bankruptcy judge was aware of this problem and, consequently, continued the meeting without further hearing until he

3. The Rule reads:
　(b) Form of Acceptance. An acceptance of a plan shall be in writing, shall identify the plan accepted, and shall be signed by the creditor.

could determine that the acceptance of the Plan was in accordance with the law.

Further, the objecting creditors have not placed in evidence anything to show that the bankruptcy judge failed to provide the personal examination or allowance of the claims, as suggested in *In Re Branner*, 9 F.2d 883, 886 (2nd Cir. 1925) upon which they rely. Indeed, the bankruptcy judge states in his memorandum, that he has personally considered all of the material placed before him, and, presumably, this includes the claims.

■ Finally, the objecting creditors argue that the bankruptcy judge erred by not providing a written order allowing the claims which were filed. They attempt to rely upon Rule 11–37(c)[4] and *In Re Branner, supra,* for the apparent proposition that such an order *must* be entered. Rule 11–37(c) does not even mention an order of any sort and *In Re Branner*, does not stand for that proposition. The Court in *In Re Branner* states, at 886: " . . . and, we may add for the guidance of [bankruptcy judges] their determination [as to the claims] *ought* to be evidenced by some written order." (emphasis supplied) This language is much more discretionary than mandatory.

■ In sum, we do not find that the bankruptcy judge was clearly erroneous in his determinations as to the requisite majority of creditors in number and amount accepting the Plan in writing.

C.

■ The objecting creditors next contend that the confirmation of the Plan was clearly erroneous as a "matter of law" because the Debtor has been guilty of acts which would be a bar to the discharge of a bankrupt—to wit, certain allegedly fraudulent transfers of funds to its parent, Uni-Shield International Corporation, its parents' subsidiaries, and loans to its officers. First, we

disagree with the assumption that this determination is one of law rather than fact. Clearly, the element of fraudulent intent, which is at the basis of the objecting creditors' contention under §§ 14(c)(4) and (c)(7) of the Act relative to § 366(3) thereof, is a question of fact to be determined from all of the evidence in the record. Second, upon consideration of the bankruptcy judge's determination of this matter in light of the record before him, especially the examination of the chief officers of Debtor at the First Meeting of Creditors, we are unable to conclude that the bankruptcy judge's determination was clearly erroneous. To be sure, in view of the fact that the bankruptcy judge accepted the credibility of the testimony provided by Debtor's officers, the evidence clearly supports the bankruptcy judge's findings.

D.

The objecting creditors contend that the solicitation of acceptances of the original Plan, which involved debt securities, violated the anti-fraud provisions of the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, and the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78jj. This contention is based upon the following factual assertions: (1) The letter of solicitation, mailed to the general creditors by the Creditors' Committee on March 7, 1975, allegedly misrepresented and omitted material facts; (2) allegedly it was not disclosed to creditors that prior years' taxes were to be abated by the City of Boston in the approximate amount of $225,000; (3) allegedly it was not disclosed to creditors that there would be a reduction or prospective reduction of rent and taxes by Debtor's landlords and the City of Boston in the amount of $260,000 per year effective July 1, 1975; (4) allegedly it was not disclosed to creditors that included in the financial statements and permitted to

---

4. The Rule reads:

(c) Temporary Allowance. Notwithstanding objection to a claim the court may temporarily

allow it to such extent as to the court seems proper for the purpose of accepting a plan.

vote for the Plan were proofs of claim in amounts in excess of $500,000, which claims the Debtor allegedly expected to be disallowed; (5) allegedly the letter failed to specify why four members of the Creditors' Committee dissented from the recommendation to accept the Plan and why two of those four resigned; (6) allegedly the letter failed to disclose the nature and extent of the allegedly fraudulent transfers to Debtor's parent corporation and officers; (7) allegedly the reference to the fact that the "non-interest bearing notes will be secured by an irrevocable bank letter of credit" failed to disclose that there was at that time no commitment whatsoever for such irrevocable letter of credit; and (8) allegedly the scope and extent of the negotiations between Debtor and First Pennsylvania Bank were not disclosed.

There is authority to support the contention of the objecting creditors that recipients of securities issued in connection with the arrangement chapter of the Bankruptcy Act are entitled to as much information as are those persons acquiring stock under ordinary conditions. *In Re American Trailer Rentals Company*, 325 F.2d 47, 53 (10th Cir. 1963) *reversed on other grounds Securities and Exchange Commission v. American Trailer Rentals Co.*, 379 U.S. 594, 85 S.Ct. 513, 13 L.Ed.2d 510 (1965). "Under Section 17(a), Securities Act of 1933, 15 U.S.C. § 77q(a), the failure to state the whole truth with regard to a security is equally as unlawful as statements of half-truths or deliberate falsehoods." *In Re American Trailer Rentals Co., supra*, at 53 (cases omitted).

■ As the final Plan of Arrangement accepted by the requisite majority of creditors, and representing the only operative Plan of Arrangement before this Court, does *not* involve any securities, assuming, *arguendo*, that the solicitation of acceptances ran afoul of the disclosure provisions of the 1933 Act, the critical issue is whether a re-solicitation is now required? The objecting creditors argue in the affirmative relying on *In Re American Trailer Rentals Company*,

*supra*, and the line of cases holding that where proxies are solicited in violation of Section 14(a) of the 1934 Act, a re-solicitation is required and that where a tender offer is made in violation of the Williams Act, § 14(e) of the 1934 Act, a corrected tender offer is required. *See e. g., Corenco Corp. v. Schiavone & Sons, Inc.*, 362 F.Supp. 939 (S.D.N.Y.1973).

The cases on which the objecting creditors rely do not support the proposition that a re-solicitation is required where no securities are involved in a Plan of Arrangement. For example, in *In Re American Trailer Rentals Company, supra*, the objecting creditors' primary authority, the Securities and Exchange Commission and the Circuit Court took the position that a re-solicitation providing the needed information relative to securities listed in a Plan of Arrangement is required. *See, Id.*, at 53. Perforce, where no securities are involved in a Plan of Arrangement, as in the action *sub judice*, the need for such a re-solicitation is obviated—there are no holders of securities to be protected, which is the rationale behind such re-solicitation. *See, Id.* Thus, the upgrading of the Plan of Arrangement from 7½% debt security to cash moots the issue.

E.

■ However, the fact that the final and operative Plan of Arrangement does not involve any securities and, as a result thereof, the solicitation of acceptances did not violate any provision of the 1933 or 1934 Acts, does not end our inquiry. For, it is clear that material misrepresentations or omissions may indeed prevent a good faith acceptance of the Plan under § 366(4) of the Bankruptcy Act.

■ We find that the bankruptcy judge's conclusion that there has been a good faith acceptance is supported by the evidence. First, the evidence presented shows that the Debtor made available to the Creditors' Committee all of the information which the objecting creditors have alleged the Creditors' Committee failed to make available to

the general creditors. The duties of the Creditors' Committee are set forth in Bankruptcy Rule 11–29(a) as follows:

> (a) Functions. The committee selected pursuant to Rule 11–27 may consult with the trustee, receiver, or debtor in possession in connection with the administration of the estate, examine into the conduct of the debtor's affairs and the causes of his insolvency or inability to pay his debts as they mature, consider whether the proposed plan is for the best interests of creditors and is feasible, negotiate with the debtor concerning the terms of the proposed plan, advise the creditors of its recommendations with respect to the proposed plan, report to the creditors concerning the progress of the case, collect and file with the court acceptances of the proposed plan, and perform such other services as may be in the interest of creditors.

█ It is clear that the Creditors' Committee is not required to forward to each creditor all of the raw data it receives and considers in the process of carrying out its duties.

Of course, a fair presentation of the status of the Debtor is required. Where, as here, there is no suggestion that either the objecting creditors or any of the creditors who accepted the Plan were misled, and where, as here, the information disclosed by the Creditors' Committee is a fair summary on its face, reversal of the bankruptcy judge's order of confirmation cannot be predicated merely upon the assertion, advanced by a handful of creditors, that additional material could have been supplied to the general creditors.

In addition, there is no evidence to support the suggestion of the objecting creditors that the Creditors' Committee in this case was under the control of the

Debtor or acted collusively with the Debtor. Accordingly, the contentions of the objecting creditors that Debtor was involved in material misrepresentations and omissions in the solicitation of acceptances for the Plan of Arrangement is unsupported by the evidence. The bankruptcy judge's determination that there was a good faith acceptance of the proposed plan as required by § 366(4) of the Act is not clearly erroneous.

**F.**

█ Finally, the objecting creditors contended at oral argument that an informal meeting of creditors held in the law offices of the Debtor on October 15, 1974 ran afoul of Bankruptcy Rule 208(c)[5]; and they point to the minutes of that meeting taken by counsel for Debtor and allegedly attached to the affidavit of Mr. Howard T. Glassman. This contention was first stated on appeal at oral argument. Neither the minutes nor the affidavit is in the record before us, and, consequently, we will not consider this contention.

## V. CONCLUSION

We have considered all of the contentions raised by the objecting creditors, whether or not raised below, in accordance with the scope of review as posited in Bankruptcy Rule 810. We find no reason to disturb the bankruptcy judge's order entered below; accordingly, the following order affirming confirmation of the Plan of Arrangement has been entered.

## ORDER

AND NOW, this 26th day of February, 1976, IT IS ORDERED that the order of confirmation entered by the Bankruptcy Judge on September 19, 1975, is AFFIRMED. Memorandum to be filed hereafter.

---

**5.** The Rule reads:

> (c) Solicitation Not Authorized. This rule shall not be construed to permit solicitation (1) in any interest other than that of general creditors; (2) by or on behalf of any person who has taken charge of property of the bankrupt as a receiver or trustee or an assignee for the benefit of creditors; (3) by or on behalf of any person disqualified from voting under Rule 207(c) or (d); (4) by or on behalf of an attorney at law; or (5) by or on behalf of a transferee of a claim for collection only.