**In re Stephen A. HOLLOCK, Individually and trading as S & R T. V. Electronics, Bankrupt.**

**PIERCE–PHELPS, INC. and First Pennsylvania Banking & Trust Company, Appellees,**

**v.**

**Stephen A. HOLLOCK, Individually and trading as S & R T. V. Electronics, Appellant.**

Bankruptcy No. 76–201.
Civ. No. 79–548.

United States District Court,
M. D. Pennsylvania.

Sept. 13, 1979.

Charles A. Shea III, Shea, Shea & Caputo, Wilkes-Barre, Pa., for appellant.

John Q. Durkin, Nogi, O'Malley & Harris, Scranton, Pa., for appellees.

## MEMORANDUM AND ORDER

RICHARD P. CONABOY, District Judge.

Stephen A. Hollock, individually and trading as S & R T. V. Electronics, filed a Voluntary Petition in Bankruptcy on February 20, 1976. Pursuant to Rules 701 and 712, Pierce-Phelps, Inc. and First Pennsylvania Banking and Trust Company brought an adversary proceeding against Hollock to determine the dischargeability of a debt which he owed to them. A hearing on the matter was held before Bankruptcy Judge Gibbons, and he determined that the Plaintiffs Pierce-Phelps and First Pennsylvania Bank were entitled to have their debt excepted from the order of discharge. Hollock has appealed that determination to this

court pursuant to Bankruptcy Rule 801. Since we find that the facts as found by the Bankruptcy Judge are amply supported by the record, and do support his conclusions of law we will affirm the determination of the Bankruptcy Judge.

The indebtedness which is the subject of this action is the result of a floor plan financing agreement which was entered into by Pierce-Phelps as supplier, First Pennsylvania Bank as financing agent and Hollock as dealer. The bankrupt applied for this plan in June of 1973. He submitted credit applications and financial statements in support of his application. None of these initial statements were false or misleading in any way. Hollock's application was approved, and on July 2, 1973, he executed a Dealer Floor-Plan Agreement and Signatory Authorization with First Pennsylvania. This contract granted him a secured line of credit in the amount of $20,000.

Under the dealer floor-plan arrangement, Pierce-Phelps supplied equipment to Hollock, and was paid for the items delivered by the bank. When Hollock subsequently sold an item he was to forward his payment for it immediately to the bank. Pierce-Phelps employed checkers, who went to the individual dealers each month to check the inventory against their records, and determine that proper payments were being made. If the checker found that a piece of equipment was not in the inventory, and payment for it had not been forwarded to the bank, he was to collect payment before leaving the dealer.

Hollock maintained his place of business in his home, and stored his equipment in his basement. During the seven months prior to December of 1974, it became increasingly difficult for the checker assigned to Hollock to perform his duties, because the cartons were stored in an inaccessible area. Hollock helped the checker by reading the serial numbers from the cartons to him, while the checker compared them to his list. After the physical count was completed, both the checker and Hollock would sign and verify the report before it went back to Pierce-Phelps.

In December of 1974, Hollock informed Pierce-Phelps' credit manager that he had "cheated" on the reports that he had made with the checker. He had called model and serial numbers from empty cartons, even though some of the items had in fact been missing since July of 1974. The total value of all the missing items was determined to be $9,150.32.

Section 17(a) of the Bankruptcy Act, 11 U.S.C. § 35(a), excepts certain debts from discharge in bankruptcy, including:

"(2) . . . liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive."

The party seeking to declare a debt nondischargeable under this section must prove the following elements:

" '(1) the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.' " *Sweet v. Ritter Finance Co.,* 263 F.Supp. 540, 543 (W.D.Va.1967).

Collier on Bankruptcy, 14th Edition Paragraph 17.16 p. 1641 discusses this provision:

"A false representation within the meaning of clause (2) may consist of a false financial statement made to the creditor for the purpose of obtaining property on credit terms. (citing cases) Although case law had reached this result prior to the 1960 amendment, (citing cases) the addition of the following clause in § 17a(2) removed any doubt on the subject: (citing cases)

'or for obtaining money or property on credit or obtaining an extension or re-

newal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive. . . .' (citing cases)

But a statement which was true when given, will not constitute a false representation because of a subsequent change in the debtor's affairs, unless the statement constitutes a continuing representation because of the debtor's duty to inform the creditor of changes in his (the debtor's) status. (citing cases)."

The Bankruptcy Judge, based on the above provisions of law, found that the inventory statements in question were "continuing representations" by the debtor, that the creditors relied on them to their detriment, that the debtor acknowledged that the statements were false, and made for the purpose of deceiving the creditors, and that as a result of their reliance on these representations, the creditors suffered a loss of $9,150.32. Therefore, he excepted this debt from discharge.

 In reviewing the determinations of a Bankruptcy Judge, the District Court must accept the Bankruptcy Judge's findings of fact unless they are clearly erroneous, giving due regard to the opportunity of the Bankruptcy Judge to judge the credibility of the witnesses. See Bankruptcy Rule 810. The clearly erroneous standard does not apply to questions of law, and the Bankruptcy Judge's legal conclusions may not be approved without our independent determination of the legal questions. *In re Gilchrist*, 410 F.Supp. 1070, 1075 (E.D.Pa.); 2A Collier Paragraph 39.28 at 1532–1533.

The debtor's objections to the findings of the Bankruptcy Judge frame three issues for our consideration: (1) whether the mis-

representations made by the debtor were subsequent to the extension of credit, and therefore have no effect on the dischargeability of this as a pre-existing debt; (2) whether the misstatements and resulting incorrect inventory reports were "continuing representations" on which the creditor was entitled to rely; and (3) whether the creditors sustained their burden of proof.

The debtor's first objection is based on the principle that the fraud necessary to except a debt from discharge must have existed when the debt was created, and that any subsequent fraudulent conduct is inconsequential. He argues that the original extension of credit here took place before any false statements were made, and that his subsequent misrepresentations therefore do not bar this debt from discharge.

 In support of this, the debtor relies on several cases which we find to be inapposite because they deal with debts created by a single contract, extension of credit or payment due, and allegations of fraud subsequent to the time the credit was extended.[1] No cases are cited where there is an ongoing relationship or course of dealing between the parties, as in the case at bar. Their agreement contemplated a flexible line of credit, subject to periodic evaluation, which placed on the debtor a duty to make continuing representations in the form of monthly inventory reports to keep the creditor informed of his status. Therefore, we cannot agree that this case is governed by the principle suggested by the debtor and is not subject to discharge on that basis.

Debtor next contends that the inventory reports were not continuing representations made by him because they were made by employees of the creditor, and were not his statements.

---

1. See e. g. In re Schalm CCH Bankruptcy Law Reporter Paragraph 66, 811 (S.D.N.Y., 1978) Cash and letters of credit obtained by general partner from limited partners were not excepted from discharge by later false representations); In re Ducote, CCH Bankruptcy Law Reporter Paragraph 66, 691 (W.D.La., 1978) (False statement submitted to loan company after loan was approved does not except that loan from discharge); In re Langdon, CCH Bankruptcy Law Reporter Paragraph 66, 117 (S.D.N.Y.1977) (Purchaser of mobile home from bankrupt seller sought to have down payment returned as a non-dischargeable debt, and court refused, because there was no fraudulent intent alleged at the inception of the contract).

The checkers employed by the creditors were operating according to the following instructions:

"It is your important responsibility to physically determine whether or not items still being financed are on the dealer's floor. A mere checking of our list against the dealer's records is not sufficient, nor should the job be delegated to the dealer or one of his employees. . . . Our letter to the dealer, welcoming him to the Plan, has told him that you will check for us, and asked the dealer to provide you with every cooperation so that you can do your job easily and with the least possible disturbance to the dealer."

■ The debtor contends that the checker was not acting according to his instructions when he allowed the debtor to assist him in making the inventory check, and that the creditor therefore is not entitled to rely on these reports. However, the checker's instructions do allow him to enlist the cooperation of the dealer, which in this instance is just what occurred. Copies of the forms submitted at the hearing indicated that they were signed by the debtor and the checker, and that the debtor knew that they would then be forwarded to Pierce-Phelps as a part of the floor-plan financing system. Under these circumstances, we find no error in the Bankruptcy Judge's determination that these constituted "continuing representations" of the debtor, on which the creditors were entitled to rely.

■ The last contention of the debtor is that his creditors have failed to sustain their burden of proof. However, our examination of the record shows that the testimony offered supports the finding of the Bankruptcy Court. There was uncontradicted testimony presented to show that the debtor made false representations to the creditors by submitting false inventory reports; that he knew these reports were false when made; that he did so for the purpose of deceiving his creditors and delaying his payments and obtaining an extension of further credit; that the creditors relied on these representations, and as a result of this reliance suffered a loss in the amount of $9,150.32. The creditors did establish all the elements necessary to except a debt from discharge under Section 17(a) of the Bankruptcy Act. The determination of the Bankruptcy Judge will be affirmed.

## ORDER

NOW, this 13th day of September, 1979, the Order of the Bankruptcy Court is hereby affirmed, and the debt owed by the bankrupt herein to the Appellees herein in the sum of $9,150.32 is excepted from the order of discharge in these proceedings.