In re Elaine R. MARTIN, Debtor.

Elaine R. Martin, Plaintiff/Appellant,

v.

North Penn Savings & Loan, Pace Construction Managers, Mr. James Davenport, John Szymanski, and Charles DeHart, Defendants/Appellees.

No. 3:CV–98–1921.

United States District Court, M.D. Pennsylvania.

March 20, 2000.

## MEMORANDUM

VANASKIE, Chief Judge.

On October 29, 1998, Plaintiff/Appellant Elaine Martin appealed an Order of Bankruptcy Judge John T. Thomas, granting summary judgment on behalf of the defendants and dismissing Martin's Adversary Complaint. Martin contends that summary judgment was inappropriate because issues of material fact remain as to (1) whether the sale of her property violated the automatic stay provisions of 11 U.S.C. § 362; (2) whether the sale was invalid under 11 U.S.C. § 549 as a post-petition transfer; and (3) whether the sale was invalid because the sale price was grossly inadequate. Upon careful review of the record, I conclude that the plaintiff has failed to show that any genuine issues of material fact exist, and accordingly, the Bankruptcy Court's decision will be affirmed.

### BACKGROUND

Martin and her husband executed a Note and Mortgage in favor of Defendant/Appellee North Penn Savings and Loan ("North Penn") in the principal amount of $18,400.00. (Stat. of Undisputed Facts, Dkt. Entry 1, Rec. on Appeal 94, at ¶ 2.) The note secured real estate located at 425 Brook Street, Moosic, Pennsylvania. (Motion for Relief from Automatic Stay, Dkt. Entry 1, Rec. on Appeal 12, at ¶ 3.) North Penn filed for foreclosure of the mortgage on January 19, 1996, and the property was then listed for Sherriff's Sale. (*Id.* at ¶ 4.) Before the Sheriff's Sale was held, Martin filed a Voluntary Petition for Bankruptcy under Chapter 13, thereby staying the sale. (Stat. of Undisputed Facts, Rec. on Appeal 94, at ¶ 1.) On April

7, 1997, North Penn moved for relief from the automatic stay as against Martin's Brook Street property. (Motion for Relief, Dkt. Entry 1, Rec. on Appeal 12.) The parties entered into a stipulation to resolve the motion, which was approved by the Bankruptcy Court on September 18, 1997.[1] (Stipulation and Order, Rec. on Appeal 32, 33.)

In December 1997, counsel for North Penn mailed a Certification of Default of the Stipulation to Martin and her counsel due to Martin's failure to make payments in accordance with the stipulation. (Cert. of Default, Record on Appeal 40.) Because of Martin's default, North Penn was automatically granted relief from the automatic stay. (Id.) Martin moved to strike the default on March 6, 1998, alleging that her payments under the stipulation were timely. (Motion to Strike Default, Rec. on Appeal 41.) At a hearing on the motion held on March 27, 1998, the parties agreed in open court to a second stipulation which continued North Penn's relief from stay and detailed a payment plan.[2] (Stat. of

Undisputed Facts, Rec. on Appeal 94, at ¶ 7.) The stipulation was subsequently reduced to writing, signed by counsel and approved by the Court. (Stipulation and Order, Rec. on Appeal 48–49.)

North Penn sent a letter to Martin's counsel on May 8, 1998, indicating that the May 1 payment had not been made, and warning that if the May 1 and May 15 payments were not made, the Sheriff Sale to be held on May 26, 1998 would take place as scheduled. (Stat. of Undisputed Facts, Rec. on Appeal 94, at ¶ 10.) A second letter was sent on May 18, reiterating North Penn's position that the sale would proceed unless the payments were made. (Id. at 11, Exh. "H".) As of May 26, 1998, Martin had not tendered the May 15 payment, and the Sheriff Sale proceeded. (Id. at ¶ 13.) The property was sold to the highest bidder, Mr. James Davenport, for $22,580.

On July 2, 1998, Martin petitioned the Court of Common Pleas of Lackawanna County to set aside the Sheriff's Sale, alleging that the sale price was grossly inad-

---

1. The stipulation, in pertinent part, provided:

 3. *Payments into Plan:* The Debtor shall pay the amount of $14,262.27 into her Chapter 13 Plan as follows: (1) for the months of August, September and October, the Debtor shall make a payment to the Trustee of $100.00 in addition to any other payments and the Trustee's fees; (2) for the sixty day period beginning in November 1997, Debtor shall make payment to the Trustee in the amount of $232.70 reflecting the full payoff of North Penn's outstanding balance. This also shall be allocated strictly to North Penn's indebtedness and shall be exclusive of all other payments and fees, including Trustee's fees.
 ***
 5. *Default: Relief from Stay:* In the event that the Debtor fails to make any payments to the Trustee as described in this Agreement, North Penn shall provide notice to the Debtor that she is in default of this Stipulation. In the event that the default is not cured within fifteen (15) days of the notice of default, North Penn shall be entitled to relief from stay without further Order of Court upon the filing of a Certification of Default.
 (Dkt. Entry 1, Rec. on Appeal 32.)

2. The second stipulation, in pertinent part, provided:

 1. The default entered by North Penn shall remain in full force and effect and North Penn shall continue to have relief from stay against the Debtor's property.
 ***
 6. If the Debtor makes the payment of April 15, 1998 ($232.70), May 1 ($1,163.50) and May 15 (amount to be established), North Penn will cancel the Sheriff Sale scheduled for May 26, 1998 and will enter into an Amendment to the September 15, 1997 Stipulation allowing the Debtor to pay off its arrearage over the life of the plan under similar terms as the September 15 Stipulation.
 7. If Debtor fails to make the three payments set forth in the previous paragraph, North Penn will maintain the May 26, 1998 Sheriff Sale date. No certification to the Court will be necessary as the default remains in place pursuant to the terms of this Stipulation.
 (Dkt. Entry 1, Rec. on Appeal 48.) The May 15 payment was later established to be $289.27. (Stat. of Undisputed Facts, Dkt. Entry 1, Rec. of Appeal 94 at ¶ 9.)

equate. (Stat. of Undisputed Facts, Rec. on Appeal 94, at ¶ 15.) A hearing was conducted by Judge Terrence Nealon. On August 20, 1998, Judge Nealon issued a Memorandum and Order denying Martin's petition, holding that Martin failed to prove that the sale price was grossly inadequate. (Appendix "B" to North Penn's Brief, Dkt. Entry 7.)

On June 3, 1998, Martin filed a complaint in Bankruptcy Court seeking to avoid the transfer of the real estate.[3] North Penn filed a motion for summary judgment on September 18, 1998, in which co-defendant John Szymanski joined. Before the adversary hearing was held, the Bankruptcy Court granted summary judgment. Martin filed a Notice of Appeal on October 29, 1998. (Notice of Appeal, Dkt. Entry 1, Rec. on Appeal 1.)

### DISCUSSION

 Under 28 U.S.C. § 158, the district courts of the United States have jurisdiction to hear appeals from bankruptcy judges. When reviewing a bankruptcy judge's decision, the court should accept the bankruptcy judge's findings of fact unless they are clearly erroneous. *In re Hollock,* 1 B.R. 212 (M.D.Pa.1979). The Supreme Court has held that a "finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). However, "[t]he clearly erroneous standard does not apply to questions of law." *Hollock,* 1 B.R. at 215; *see also In re Gilchrist Co.,* 410 F.Supp. 1070, 1074 (E.D.Pa.1976). As a result, a bankruptcy judge's legal conclusions "may not be approved without [an] independent determination of the legal questions." *Id.* A decision to grant summary judgment involves a question of law over which this Court's review is plenary.

Martin contends that it was inappropriate for the court to grant summary judgment because issues of material fact still exist as to each of her claims.[4] First,

---

3. Martin's Chapter 13 case was dismissed on August 24, 1998, on motion of the Trustee, due to Martin's failure to make monthly payments. (Order, Dkt. Entry 1, Rec. on Appeal 62.) The Bankruptcy Court retained jurisdiction over the Adversary Proceeding. (*Id.*)

4. Federal Rule of Bankruptcy Procedure 7056 adopts the summary judgment standards set forth in Federal Rule of Civil Procedure 56 for adversary proceedings. Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Facts that could alter the outcome are material facts." *Charlton v. Paramus Bd. of Educ.,* 25 F.3d 194, 197 (3d Cir.), *cert. denied,* 513 U.S. 1022, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

Initially, the moving party must show the absence of a genuine issue concerning any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 329, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.,* 862 F.2d 56, 59 (3d Cir.1988); *Continental Ins. Co. v. Bodie,* 682 F.2d 436 (3d Cir.1982). Once the moving party has satisfied its burden, the nonmoving party "must present affirmative evidence to defeat a properly supported motion for summary judgment." *Anderson,* 477 U.S. at 256–57, 106 S.Ct. 2505. Mere conclusory allegations or denials taken from the pleadings are insufficient to withstand a motion for summary judgment once the moving party has presented evidentiary materials. *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir.1990). Rule 56 requires the entry of summary judgment, after adequate time for discovery, where a party "fails to make a showing sufficient to establish the existence of an element essential to

Martin contests the validity of the relief from the stay due to default, arguing that the relief from stay was invalid because she had not defaulted on her payments under the terms of the stipulation. The Bankruptcy Court found that the parties had entered into a stipulation on September 18, 1997, which the court approved. North Penn filed a Certification of Default on December 2, 1997, alleging that Martin had defaulted on her payments. Martin responded by moving to strike the default. During a hearing on that motion, the parties announced a second stipulation in open court, which was then reduced to writing and approved by the court. The second stipulation stated that "[t]he default entered by North Penn shall remain in full force and effect and North Penn shall continue to have relief from stay against the Debtor's property."

Although Martin contends that she never defaulted on the terms of the first stipulation,[5] Martin nevertheless agreed to the terms of the second stipulation, which permitted North Penn to continue its relief from stay. The Bankruptcy Court found that although Martin disavowed knowledge of the contents of the written stipulation in her pleading of October 2, 1998, she indicated an awareness of the agreement on March 24, 1998. Furthermore, the stipula-

tion was first presented in open court, and the order approving the stipulation was served on both Martin and her counsel.

It is well recognized that "valid stipulations entered into freely and fairly, and approved by the court, should not be lightly set aside." *Waldorf v. Shuta,* 142 F.3d 601, 616 (3d Cir.1998)(*quoting Kohn v. American Metal Climax Inc.,* 458 F.2d 255, 307 (3d Cir.1972), *partially overruled on other grounds en banc by Kershner v. Mazurkiewicz,* 670 F.2d 440, 448 (3d Cir. 1982)). Although Martin contests the first and second stipulation, she has not proffered sufficient evidence to call into question their binding effect.

As to the default that resulted in the Sheriff's Sale, the record clearly shows that Martin made some payments in accordance with the stipulation's terms, but not all payments. Indeed, Martin's *pro se* response to the summary judgment motion notes that the payment of $289.27 due on May 15, 1998 was not tendered until June 1, 1998, five days after the Sheriff's Sale. Because the undisputed facts plainly show a default under the second stipulation, the bankruptcy court correctly concluded that the May 26, 1998 Sheriff's Sale did not violate the Bankruptcy Code's automatic stay provision.[6]

that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

**5.** The Certification of Default alleged that Martin failed to make her September and October payments. The record does include money order receipts in the amount of $100.00 dated August 1997, September 1997 and October 1997.

**6.** Martin argues that the foreclosure sale is invalid because she was in "substantial compliance" with the second stipulation prior to the sale occurring on May 26, 1998. According to the stipulation entered April 13, 1998, North Penn agreed to cancel the Sheriff's Sale if Martin made payments on April 15, 1998 ($232.70), May 1 ($1,163.50, later reduced to $930.80) and May 15 (amount later established to be $289.27). However, if the payments were not made, the Sheriff's Sale would continue as scheduled. The record

shows that the April payment had been made. As of the morning of the Sheriff's Sale, Martin had completed her payment for May 1, 1998. However, the May 15 payment in the amount of $289.27 was not paid to the Trustee until June 1, 1998.

Martin argues that her payments of the amount in arrears by the sale date was substantial compliance. However, the stipulation and the subsequent letters written by North Penn made it clear that *both* May payments had to be made prior to the sale in order for the sale to be cancelled. It is undisputed that the May 15 payment was made after the sale. Since the late tender of the payments was not in conformance with the stipulation's terms, the foreclosure was not invalid on this ground. *See, e.g., In re Blanton,* 78 B.R. 442, 444 (D.S.C.1987) (tender of payment on October 3 when consent order required debtor to pay on October 1 was not in substantial compliance with the consent

Martin also contends that the sale of the property was an invalid post-petition transfer. Under 11 U.S.C § 549, a transfer of property can be avoided if the transfer occurs after the commencement of the case and is not authorized by the Bankruptcy Court. As Judge Thomas noted in his opinion, the original stipulation signed on September 15, 1997 between Martin and North Penn provided that "in the event that the default is not cured within 15 days of the notice of default, North Penn shall be entitled to relief from stay without further order of court upon the filing of a certification of default." This stipulation was approved by Judge Thomas on September 18, 1997. North Penn filed its certification of default on December 2, 1997 in accordance with this court-approved stipulation, thereby effecting relief from the automatic stay. The efficacy of the certificate of default was confirmed by the parties' second stipulation.

A foreclosure sale conducted pursuant to an order granting relief from an automatic stay is a transfer authorized by the court, and does not violate § 549. *See In re Matheson*, 84 B.R. 435 (Bankr. N.D.Tex.1987). Judge Thomas' approval of the parties' first stipulation provided the necessary "court authorization" for the post-petition transfer. The validity of the sale was confirmed by the parties' second stipulation, which also received Judge Thomas' approval. It therefore follows that the May 26, 1998 Sheriff's Sale was not a prohibited post-petition transfer.

Finally, Martin alleges that the sale of her property was a fraudulent conveyance under state law because the sale price was grossly inadequate. The Bankruptcy Court dismissed this count of the complaint under the doctrine of res judica-

ta. It is settled law that issue preclusion applies to bankruptcy proceedings. *In re Wilson*, 116 F.3d 87, 90 (3d Cir.1997); *Graham v. Internal Revenue Service*, 973 F.2d 1089 (3d Cir.1992). Issue preclusion applies even when the prior judgment occurred in state court. *In re Wilson*, 116 F.3d at 90 (*citing Laganella v. Braen*, 900 F.2d 621, 624–630 (3d Cir.1990)). Parties invoking the doctrine of issue preclusion must prove (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is evoked must be fully represented in the prior action. *Greenleaf v. Garlock Inc.*, 174 F.3d 352, 358 (3d Cir.1999); *In re Edwards*, No. 96–17868DWS, 1999 WL 223506, at *3 (Bankr. E.D.Pa. April 13, 1999).

The record shows that all four elements of issue preclusion are met, thereby warranting judgment on Martin's third claim. The issue raised by Martin in this adversary complaint is identical to the issue addressed by the state court, *i.e.*, whether the foreclosure sale price was grossly inadequate. Martin had the opportunity to "actually litigate" the issue in state court. A hearing was held in which Martin and North Penn had the opportunity to offer evidence, call witnesses and present argument. Furthermore, since adequacy of the price was the sole issue addressed by Judge Nealon, the determination of that issue was clearly "essential to the final judgment." The record also shows that Martin was fully represented in the prior action. Martin has offered no argument as to why issue preclusion should not be imposed.[7] Accordingly, the

---

order's terms); *In re Philadelphia Athletic Club, Inc.*, 17 B.R. 345, 348 (Bankr.E.D.Pa. 1982) (tender of payment on November 10 was a default under terms of stipulation requiring payment by November 1).

**7.** Martin has not shown that there remains pending any state court proceedings or ap-

peals related to her state court challenge to the adequacy of the Sheriff's Sale price. Even if there were state court proceedings still pending, dismissal of Martin's third cause of action would be warranted. *See In re Brown*, 951 F.2d 564, 569–570 (3d Cir.1991) (state court summary judgment decision in mortgage foreclosure action "final" for pur-

Bankruptcy Court's decision will be affirmed.

## CONCLUSION

Because Martin has failed to show that issues of material fact remain, and it is clear that defendants are entitled to judgment as a matter of law, the Bankruptcy Court's decision to grant summary judgment will be affirmed. An appropriate Order is attached.

poses of applying issue preclusion in Bankruptcy Court proceeding); *Shaffer v. Smith*, 436 Pa.Super. 411, 648 A.2d 26 (1994) (trial court verdict "final" for purposes of issue preclusion even if appeals not concluded), *aff'd*, 543 Pa. 526, 673 A.2d 872 (1996); Restatement (Second) of Judgments § 13, comment f (1980) ("a judgment otherwise final remains so despite the taking of an appeal").

Moreover, principles of comity and respect for state court autonomy which underlie the Full Faith and Credit Act, 28 U.S.C. § 1738, militate against a federal court interfering with an otherwise valid lower state court decision. *See In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 134 F.3d 133, 142 (3d Cir.1998); *In re Wilson*, 116 F.3d at 90.