I respectfully dissent from the majority's affirmance of summary judgment in favor of the Village. I find summary judgment was improper since there were factual issues as to whether appellant had complied with the consent order by tearing down the wall.
The record reveals that Village Administrator Andrew Jones directed a letter to Nethero on May 9, 2000, listing various conditions which were to be fulfilled "to continue this variance permit and permit construction of a new wall." (emphasis added.) The letter also indicated that "[d]emolition of the existing structure may take place immediately * * *." At the Board meeting on April 18, 2000, Village Solicitor Robert Hines, although opining that the consent order "ha[d] already been violated," stated: "Now the original plans that Mr. Nethero filed were filed before * * * March the 9th but this is totally different than what was submitted before." According to the discussions at the April 18th meeting, Village Engineer Lars Johnson indicated, based on his review, that Nethero intended to "tear most of it down," essentially leaving in some of the footers and a nineteen-feet section section of the old wall, in part for the purpose of avoiding erosion and water run-off. Thereafter, a new gabion system was to be installed, which Nethero described as "more like a landscaping." Tr. at 9. The discussion thereupon continued as follows:
 MR. NETHERO: It's a wire basket, they make 4, 6, 8, 10, 12-foot lengths and they're three high and three wide, you fill them full of rocks and then you stagger them, set them back, so if you make them 12-foot high you would put base footers in them 12 foot or 7-feet high, 7 feet back in and they stay there.
MR. MILLER: Like building blocks.
 MR. NETHERO: It's a practice that highways have used for years and years to hold dirt.
 CHAIRMAN AKINS: You fill this but once the wall is done what keeps it from collapsing over?
MR. NETHERO: It's not going to collapse.
 MR. MILLER: We're leaving an existing footer. We're going to leave a foot above the existing wall in (sic) then we're going to build the proposed gabion right along that on the existing wall.
Tr. at 9-10.
Although Village Solicitor Hines emphasized that he did not want any new variances to be interpreted as an abandonment of the consent order deadlines, it appears to me that the emergence of the gabion project makes the issue of potential consent order violations a much more complex issue than the Village herein contends. It is established that a consent order has many of the attributes of an ordinary contract and should be construed for enforcement purposes basically as a contract. In reBlanton (1987), 78 B.R. 442, 444, citing United States v. ITT ContinentalBaking Co. (1975), 420 U.S. 223, 236-38. As such, some courts have approached the issue of compliance with a consent order by addressing whether there has been substantial compliance with the terms thereof. See Adair v. Troy State University of Montgomery (M.D.Ala. 1995),892 F. Supp. 1401, 1403; In re Martin (2000), 253 B.R. 346, 350. The Ohio Supreme Court similarly applied a substantial compliance analysis in an appeal of a contempt action stemming from a consent order. See Stateex rel. Celebrezze v. Gibbs (1991), 60 Ohio St.3d 69, 75.
Upon review of the record in this matter, I conclude that reasonable minds could come to differing conclusions as to whether Nethero's attempts to remedy the problems and safety concerns leading to the consent order, by tearing down most of the original wall and embarking on a gabion-based method of new construction, were in substantial compliance with the terms of said order. I would sustain the Trust's Second Assignment of Error and remand for further proceedings on this issue.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Holmes County Court of Common Pleas is affirmed. Costs assessed to appellant.