In the Matter of NORTHWEST PLACE, LTD., f/k/a Urban Medical, Ltd., a Georgia Limited Partnership, Debtor.

NORTHWEST PLACE, LTD., Plaintiff,

v.

Lawrence E. COOPER and Carol Z. Cooper, Defendants.

Bankruptcy No. A85–03874–ADK. Adv. No. 85–0816A.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

May 29, 1987.

William L. Rothschild, Wildman, Harrold, Allen, Dixon & Branch, Atlanta, Ga., for defendants.

Robert E. Hicks, Hicks, Maloof & Campbell, Atlanta, Ga., for plaintiff.

### MEMORANDUM OF OPINION

A.D. KAHN, Bankruptcy Judge.

The above-styled Chapter 11 bankruptcy case and adversary proceeding are before

the Court on a Motion to Dismiss [1] filed by Lawrence E. Cooper and Carol Z. Cooper [hereinafter referred to as the "Coopers"]. A hearing on said Motion and the Court's Order to show cause why the Court should not abstain in the adversary proceeding was held on May 6, 1987. After hearing argument of counsel, the Court took the matters under advisement. The Court finds these matters to constitute core proceedings within the meaning of 28 U.S.C. § 157(b)(2). Having now fully considered the argument of counsel and the pleadings filed, the Court makes the following findings of fact and conclusions of law.

## I.

The Debtor is a Georgia limited partnership. Consulare Corporation, N.V. and Medoff Corporation, N.V., both Netherland-Antilles corporations, are the general partners of the Debtor, and Medoff is currently the Debtor's only limited partner. The Debtor's only asset is an office building located in Cobb County, Georgia. To fully understand the dispute between the Coopers and the Debtor, it is necessary to review the dealings between the parties up to this point in time. The facts recited below are undisputed.

In 1982, Dr. Cooper was the sole general partner of Urban Medical Limited [2] which owned the office building in question. Mrs. Cooper was a limited partner of Urban Medical Limited. On May 26, 1982, Dr. Cooper entered into a transaction by which various entities controlled by Sylvia Kaiser [3] invested in Urban Medical Ltd.

Urban Medical Ltd.'s sole asset was the office building. Dr. Cooper and Medoff became the general partners of the partnership, and Dr. and Mrs. Cooper and Medoff became the limited partners. Prior to this transaction, the Coopers' interest in the building was valued at $2,500,000.00. Medoff paid $500,000.00 for a one-half interest in the partnership, and Regalo invested $2,000,000.00 in the form of a loan [4] to the partnership. In 1983, there was an adjustment of the players in the partnership. Dr. Cooper resigned as a general partner and was replaced by Consulare, thereby making the partnership's general partners Medoff and Consulare. Dr. and Mrs. Cooper and Medoff remained the limited partners, and the Coopers retained a one-half interest in the partnership.

On May 18, 1984, an agreement was entered into whereby the Coopers were to sell their one-half interest in the partnership to the Kaiser entities. On July 16, 1986, the sale closed in escrow. When the Kaiser entities would not go forward with the sale, Dr. Cooper filed a complaint seeking specific performance of the sales agreement and damages in the Superior Court of Fulton County, Georgia against Urban Medical, Ltd., Medoff, Consulare, Dara Realty, N.V.,[5] and Kaiser. On October 29, 1984, a consent order was entered into by the Parties and signed by the Superior Court Judge. The Consent Order provides, in part, that "[t]he parties have agreed and this Court finds that [the 1984 Sale documents] ... are valid, binding and enforceable in accordance with their terms." See Coopers' Consolidated Exhibit E at 3. From statements of counsel at the May 6, 1987 hearing before this Court, it appears

1. The Coopers' Motion to Dismiss is contained in a pleading captioned "Consolidated Pretrial Motions for (1) Summary Judgment on Cooper's Fourth Objection to the Regalo Claim; (2) Summary Judgment on the Adversary Proceeding; and (3) Dismissal of the Case filed on December 5, 1986. By Order entered June 27, 1986 in the main bankruptcy case, the Coopers' Objection to the Claim of Regalo Corporation, N.V. was consolidated with the adversary proceeding for the purposes of discovery and trial.

2. In March of 1985, Urban Medical, Ltd. changed its name to Northwest Place, Ltd.

3. Sylvia Kaiser is a citizen of Liechtenstein and the managing director and attorney-in-fact of Medoff Corporation, N.V. and Regalo Corporation, N.V. She is also the attorney-in-fact of Consulare.

4. The Coopers dispute the characterization of Regalo's contribution as a loan. However, for the purposes of the matters *sub judice*, it is not material whether it was a loan or capital contribution. The Court specifically does not pass on this issue.

5. Dara Realty, N.V. is a Netherlands Antilles corporation controlled by Kaiser.

that the Superior Court of Fulton County action is still pending.

The structure of the sale is somewhat complicated. The Coopers sold their interest to the partnership and Dara Realty. Dara Realty then transferred its interest to the partnership. Medoff and Consulare remained the general partners of the partnership and Medoff became the sole limited partner. From the sale, Medoff obtained a 96% interest in the partnership and Consulare obtained 4%. The Coopers were paid $423,790.00 in cash and were given a promissory note for $2,641.250.00 which was secured by the building and subordinate to the two security interests of nonaffiliated lenders. The partnership defaulted on the promissory note to the Coopers in July of 1985. On July 20, 1985, the Coopers accelerated the note and demanded full payment plus attorney's fees. On July 26, 1985, the partnership filed for relief under Chapter 11 of the Bankruptcy Code.

The Debtor then filed the instant adversary complaint, which consists of eleven counts. In the complaint, the Debtor seeks to set aside the transfer agreed to by the Debtor in the Superior Court of Fulton County Order dated October 29, 1984. The Debtor has included in its complaint many theories upon which it asserts the transfer should be set aside. Counts I, II, and V seek to set the transfer aside as a fraudulent conveyance pursuant to 11 U.S.C. § 548. Counts III and IV seek to set the transfer aside as a fraudulent transfer under state law pursuant to O.C.G.A. § 18–2–22(3). In Count VI, the Debtor alleges that the transfer was prohibited by O.C.G.A. § 14–9–47(a) in that the assets remaining after the transfer were insufficient to pay the debts of the partnership. In Count VII, the Debtor alleges, pursuant to O.C.G.A. § 13–5–6, that the transfer was made under duress. In Count VIII, the Debtor asserts that, because of the inequitable conduct of the Coopers, their claims should be subordinated pursuant to 11 U.S.C. § 510. Count IX of the complaint seeks to set aside the transfer as a preference pursuant to 11 U.S.C. § 547. Count X demands a judgment for the transferred property or the value thereof pursuant to

11 U.S.C. § 550. Finally, in Count XI, the Debtor alleges that Dr. Cooper has violated certain provisions of the Securities and Exchange Act of 1934.

The Debtor also filed a plan of reorganization in which it proposes to make no payments to the Coopers. However, in the event the Debtor fails to prevail in the adversary proceeding against the Coopers, the Debtor states in its plan that the Coopers' claim, classified as a Class 7 claim, "will be paid in the full amount determined by the Court to constitute an Allowed Claim on such terms directed by the Court to constitute treatment leaving the such claim unimpaired within the meaning of the Bankruptcy Code." Debtor's Plan of Reorganization filed November 25, 1985 at 6.

In its Disclosure Statement, the Debtor states that the cash flow from the operation of the building is sufficient to pay only the current operating expenses and the first and second security interests on the building. Disclosure Statement at 8. The Coopers have received no payments since June of 1985. The Plan does provide that a general partner, *in its sole discretion,* may advance cash to make the required payments under the Plan. Thus, in the event the Court were to decide the adversary complaint in favor of the Coopers, it is unclear whether there would be sufficient funds to service the Coopers' debt. Approval of the Debtor's Disclosure Statement and Plan of Reorganization was held in abeyance pending resolution of the adversary proceeding. *See* Order entered January 23, 1986.

In its schedules, the Debtor lists the following secured debts: 1) a first security interest in the building held by Kansas City Life in the amount of $887,977.77; 2) a second security interest in the building held by Lincoln State Savings & Loan in the amount of $1,050,000.00; and 3) a disputed third security interest in the building held by the Coopers in the amount of $2,631.554.00. *See* Schedule A–2. As stated above, the Debtor is currently making the payments to the first and second secured creditors. The Coopers have been receiving no payments.

The Debtor also lists the following unsecured creditors: 1) Regalo Corp., N.V. with a balance at the time of the filing of the Debtor's bankruptcy petition of $3,248,-750.00; 2) Fine & Block, Attorneys at Law, in the amount of $5,000.00; 3) Georgia Power Co. in the amount of $3,500.00; 4) Joseph Barnes & Assoc. in the amount of $1,900.00; 5) Jim Brooks in the amount of $1,111.11; and 6) Cobb County Water Dept. in the amount of $250.00. The Debtor listed the office building and realty, which is its major asset, as having a market value at the time of the filing of the petition of $9,000,000.00. *See* Schedule B-1.

## II.

The Coopers urge the Court to dismiss this bankruptcy case on the ground that it was filed in bad faith. The Eleventh Circuit Court of Appeals has held that, although a finding of a lack of good faith is not among the grounds listed in 11 U.S.C. § 1112(b), it is nonetheless a ground for dismissal of a Chapter 11 case.

In finding a lack of good faith, courts have emphasized an intent to abuse the judicial process and the purposes of the reorganization provisions. Particularly when there is no realistic possibility of an effective reorganization and it is evident that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights, dismissal of the petition for lack of good faith is appropriate. *See In re Eden Associates*, 13 B.R. 578, 583–85 (Bankr.S.D.N.Y.1981); *In re Victory Construction Co., Inc.*, 9 B.R. 549, 555–56, 558, 564–65 (Bankr.C.D.Cal.1981); *In re G-2 Realty Trust*, 6 B.R. 549, 552–54 (Bankr.D.Mass.1980); *In re Dutch Flat Investment Co.*, 6 B.R. 470, 471–72 (Bankr.N.D.Cal.1980); *See also In the Matter of Levinsky*, 23 B.R. 210, 219–20 (Bankr.E.D.N.Y.1982); *In the Matter of Northwest Recreational Activities, Inc.*, 4 B.R. 36, 38–40 (Bankr.N.D.Ga.1980).

*Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 674 (11th Cir.1984).

In reaching a determination of whether a case has been filed in bad faith, courts have considered the following factors:

1.  Whether the debtor has few or no unsecured creditors;
2.  Whether there has been a previous bankruptcy petition by the debtor or a related entity;
3.  Whether the pre-petition conduct of the debtor has been improper;
4.  Whether the petition effectively allows the debtor to evade court orders;
5.  Whether there are few debts to non-moving creditors;
6.  Whether the petition was filed on the eve of foreclosure;
7.  Whether the foreclosed property is the sole or major asset of the debtor;
8.  Whether the debtor has no ongoing business or employees;
9.  Whether there is no possibility of reorganization;
10. Whether the debtor's income is not sufficient to operate;
11. Whether there was no pressure from non-moving creditors;
12. Whether reorganization essentially involves the resolution of a two-party dispute;
13. Whether a corporate debtor was formed and received title to its major assets immediately before the petition; and
14. Whether the debtor filed solely to create the automatic stay.

*In re Grieshop*, 63 B.R. 657, 662–63 (N.D. Ind.1986). *See also, Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.)* 779 F.2d 1068, 1073 (5th Cir.1986).

These factors must be considered carefully, and the determination is " 'subject to judicial discretion under the circumstances of each case.' " *In re Albany Partners, Ltd.*, 749 F.2d at 674 (quoting *In re Nancant*, 8 B.R. 1005, 1006 (Bankr.D.Mass. 1981). The Coopers maintain that this is a two-party dispute, that the Debtor is at-

tempting to "escape" from state court, and that the Debtor has failed to propose an effective plan of reorganization. The Court concurs.

The sole purpose of this case is not to reorganize within the historical meaning of that word in the context of the Bankruptcy Code. Rather, the Debtor is using the provisions of Chapter 11 to assert the powers of the trustee as a debtor-in-possession in order to set aside the security interest of the Coopers. The real issue in this case involves state law: the formation of a partnership and the dissolving of that partnership by converting an equity partner into a secured creditor. The Debtor wants to readjust its relationship to the Coopers by invoking federal jurisdiction. Full faith and comity will not permit this. Bankruptcy relief for that readjustment is not available. The Debtor and the Kaiser entities struck a deal with the Coopers. It was done in the setting of litigation before the Superior Court of Fulton County. The Superior Court Judge signed the consent order, along with all of the parties to that litigation. The Debtor has failed to show that the transaction affected any entity except, perhaps, itself and the other related entities. There are a few other inconsequential unsecured creditors, and none have voiced any opposition to the Coopers' Motion to Dismiss.

The real purpose of the filing of this case was to bring the 11-count adversary complaint to set aside the transfer to the Coopers. The counts based upon state law may be asserted in the appropriate state court forum. The counts based upon the Bankruptcy Code are an attempt to misuse those provisions. Section 548 of the Bankruptcy Code was not intended to be used to set aside a transfer done by consent through a state court order especially where no other additional parties are involved. Under these particular circumstances, this Court will not allow a party to state court litigation to seek refuge within the Bankruptcy laws of the United States in order to undo what it agreed to do in a consent order signed by the state court, particularly when it will only benefit the Debtor and related entities. While the Court is mindful that Congress intended that there be open access to the bankruptcy process, *See In re Clinton Centrifuge, Inc.*, 72 B.R. 900 (Bankr.E.D.Pa.1987), the Court concludes that the Debtor is attempting to abuse that process.

In the case of *In re So. Cal. Sound Sys., Inc.*, 69 B.R. 893 (Bankr.S.D.Cal.1987), the Court found that where a debtor had filed a petition under Chapter 11 for the sole purpose of taking advantage of the Bankruptcy Code's provision for rejecting an executory contract pursuant to § 365, the debtor had filed its petition in bad faith. The Court stated that "[w]here the Court becomes convinced that the true purpose of filing a petition is other than to reorganize a financially distressed business, but to merely take advantage of one of the remedies available under the Code, dismissal is appropriate in order to protect the jurisdictional integrity of the Court." 69 Bankr. at 900. (citations omitted). This is exactly what the Debtor herein is attempting: to set aside the transfer to the Coopers pursuant to the avoidance powers provided in the Code.

The Debtor contends that its petition was filed in good faith, and that it has demonstrated its good faith by performing all duties that are required of a debtor-in-possession. It has filed all of its monthly operating reports, promptly filed a plan of reorganization, and has diligently pursued its adversary proceeding against the Coopers. The Court finds that, although the Debtor may have adhered to the letter of the law, it has not complied with the spirit of the law. Chapter 11 relief should not be made available to an entity solely to get an upper hand in litigation against another party, nor solely to provide an alternate forum for a debtor. *See In re Volpe*, 53 B.R. 46, 48 (Bankr.M.D.Fla.1985). Although the Debtor contends that, in the event it should lose the adversary proceeding against the Coopers, it still has a sincere desire to reorganize, the Court finds this contention unpersuasive. The Debtor's plan of reorganization provides no certain commitment to fund a plan that would include payment of the Coopers' secured

claim. It is quite apparent to the Court that the *only* thing the Debtor wants to reorganize is its relationship with the Coopers by converting them back into equity holders. The Court will not permit the Debtor to litigate those issues in this forum. There is state court litigation pending between the parties and the state court is the appropriate forum for resolution of the dispute. The Court finds that the Debtor has come to this Court with a lack of good faith and is attempting to use the Bankruptcy Code for purposes other than for those Congress intended.

Therefore, the Court will grant the Coopers' Motion to Dismiss the instant case. An appropriate Order is entered contemporaneously herewith.