**In re COLUMBIA DATA PRODUCTS, INC., Debtor.**

**Richard E. LOWRY, Trustee, Appellant,**

**v.**

**SECURITY PACIFIC BUSINESS CREDIT, INC., Appellee.**

Civ. A. No. 88–2387.
Bankruptcy No. 85–A–0718.
Adv. No. 86–0475A.

United States District Court,
D. Maryland.

March 30, 1989.

James P. Koch, Baltimore, Md., for appellant.

Stuart M. Widman, Much, Shelist, Freed, Denenberg, Ament & Eiger, Chicago, Ill., for appellee.

## MEMORANDUM OPINION

HARGROVE, District Judge.

### INTRODUCTION

Currently pending before this Court is an appeal by Columbia Data Products, Inc. ("CDP") of a decision issued by Paul Mannes, United States Bankruptcy Judge for the District of Maryland, on June 29, 1988, granting summary judgment for Security Pacific Business Credit ("Security") and denying CDP's cross-motion for summary judgment.

The issues have been briefed in full. After reviewing the record and the briefs submitted by the parties, the Court concludes that the facts and the legal arguments are adequately presented. Therefore, no hearing is necessary; the Court proceeds on the pleadings submitted. Local Rule 6 (D.Md.).

### FACTUAL BACKGROUND

On June 15, 1984, CDP executed a promissory note in favor of Logan Circuits, Inc. ("Logan") in the amount of $1,020,000. On August 15, 1984, CDP entered into a Standby Extension Agreement ("Agreement") with some of its existing creditors, including Logan. The Agreement involved a framework for the repayment of CDP's indebtedness and set up a Supplier's Committee ("Committee") in order to negotiate and monitor the Agreement.

On March 4, 1985, which was within ninety days prior to filing the original bankruptcy suit, CDP transferred $50,000 to the Committee. The Committee, in turn, deposited this money into its account at Mercantile Safe Deposit and Trust Company ("Mercantile"). On this same day Mercan-tile issued Logan a Committee check for $38,000. Approximately six weeks later, on April 18, 1985, CDP transferred $50,000 to the Committee's account at Mercantile. The following day Mercantile issued a second Committee check, this time in the amount of $73,000, to Logan.

On December 30, 1983, Logan signed a Revolving Credit Note with Security. This note was the result of Security's extension of loans and credit to Logan in the amount of $2,320,000. Security gave value and received in return a security interest in all of Logan's account receivables. This note required Logan to deposit its customers' checks into a special account at the United Jersey Bank. United Jersey was given exclusive authority to make withdrawals from the account for the sole purpose of transferring these monies to Security, via an intermediary bank in Chicago. Security was not aware of the source of the funds.

CDP filed a voluntary petition under Chapter 11 on May 3, 1985. On June 7, 1985, Richard E. Lowry was appointed as—and continues to be—the Chapter 11 Trustee in this matter. CDP converted its Chapter 11 to a Chapter 7 petition on November 18, 1985.

### I. DISCUSSION

■ The factual findings of the bankruptcy judge must be accepted by this Court unless clearly erroneous. *In the Matter of Urban Development Co. and Associates,* 452 F.Supp. 902, 905 (D.Md. 1978); Bankruptcy Rule 8013. The Fourth Circuit has determined that *de novo* review is reserved for those instances in which bankruptcy courts have rendered decisions on issues tangential or peripheral to the bankruptcy code, such as state or common-law actions. *1616 Remino Ltd. Partnership v. Atchison & Keller Co.,* 704 F.2d 1313, 1318 (4th Cir.1983); *see also Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Both CDP and Security have characterized correctly the present case as a proceeding involving § 547 and § 550 of the Bankruptcy Rules. Accordingly, the application of the clearly

erroneous standard to factual findings presents no constitutional problems. *Willemain v. Kivitz,* 764 F.2d 1019, 1022 (4th Cir.1985).

In *Anderson v. City of Bessemer,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), the Supreme Court interpreted the clearly erroneous standard as provided for by Fed.R.Civ.P. 52(a):

> [A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Anderson v. City of Bessemer,* 470 U.S. at 573, 105 S.Ct. at 1511, (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 394–395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). The *Anderson* Court elaborated:

> This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court overtakes the bounds of its duty ... if it undertakes to duplicate the duty of the lower court. "In applying the clearly erroneous standard to the findings of a [bankruptcy court] sitting without a jury, [district courts] must constantly have in mind that their function is not to decide factual issues *de novo.*" *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 123 [89 S.Ct. 1562, 1576, 23 L.Ed.2d 129] (1909). If the [bankruptcy court's] account of the evidence is plausible in light of the record viewed in its entirety, the [district courts] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous. *United States v. Yellow Cab Co.,* 338 U.S. 338, 342 [70 S.Ct. 177, 179–80, 94 L.Ed. 150] (1949); see also *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844 (1982).... This is so even when the [bankruptcy court's] findings do not rest on credibility determinations, but are based instead on physical or documentary evidence of inferences from other facts ...

*Id.* at 573–74, 105 S.Ct. at 1511–12.

■ By contrast, the clearly erroneous standard does not apply when determining the propriety of the bankruptcy judge's conclusions of law, i.e., determination of what law applies or determination of the ultimate legal conclusions resulting from the application of the law to the facts. Legal conclusions made by the bankruptcy judge may not be approved by the district court without an independent determination. *In re Hunter Sav. Ass'n,* 34 B.R. 368, 374 (Bankr.S.D.Ohio 1983); *In re Hollock,* 1 B.R. 212, 215 (Bankr.M.D.Pa.1979). On appeal, the district court is free to draw inferences or deductions different from those of the bankruptcy court on documentary, undisputed, or stipulated evidence. *In re Day,* 4 B.R. 750, 752 (Bankr.S.D.Ohio 1980).

## II.

This Court will address the § 550(a)(1) issue based on Bankruptcy Rule 8006. Under this Rule an appellee is allowed to file a statement of additional items to be included on appeal. The appellee correctly followed the Rule 8006 procedure.

## A.

■ The appellant argues that § 550(a)(1) does not apply to Security because an "initial transferee" is the person who is just entitled to receive the transfer; i.e., the party to whom the transfer is directly made. The "initial transferee" is defined as the party who initially received and controlled the debtor's property. *In re Jorges Carpet Mills, Inc.,* 50 B.R. 84 (Bankr.E.D.Tenn.1985). The *In re Jorges* court granted summary judgment for the defendant bank because the bank was found to be a subsequent transferee under § 550(a)(2). The debtor's officer named himself as a remitter on a cashier's check drawn from one of the corporation's accounts and used the funds to pay a personal debt to the bank. The *In re Jorges* court

held that the officer was the initial transferee because he was the first person to receive and control the transfer.

In the present case, Security was not the "initial transferee." Security was not named on any checks from CDP; checks were made payable to the Committee and the Committee was given control over disbursements of CDP's funds. The Committee then transferred the funds to Logan who in turn deposited the money in a second bank (United Jersey Bank), which transferred the same funds to Security. These facts illustrate that Security was neither the first party to receive the funds from the debtor nor the party who initially controlled the funds.

Other courts have found that the "initial transferee" can be the party who deals directly with the debtor in a business relationship. An attorney who received money on behalf of his client as a result of a settlement was found not to be an "initial transferee" under § 550(a)(1). *In re Fabric Buys of Jericho, Inc.*, 33 B.R. 334 (S.D. N.Y.1983). The client himself was defined as the party who had a direct business relationship with the debtor and, therefore, was deemed the initial transferee.

In this case, Security had no business relationship with CDP. Logan was the corporation who conducted business with CDP, therefore, Security cannot be the "initial transferee" in the debtor-creditor relationship between Columbia Data Products and Logan. *In re Black & Geddes, Inc.*, 59 B.R. 873, 875 (Bankr.S.D.N.Y.1986).

A third interpretation of the "initial transfer" theory is the minimum requirement test. *Bonded Financial, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir.1988). To satisfy the minimum requirement status the "initial transferee" must be able to use the money for its own purposes. One who receives a tangible benefit from the transfer, or merely deems it their own is not an initial transferee. *Id.* at 893. Security correctly argues that the facts of this case show that Logan received the money and used it for the goal of reducing its personal debt. It follows that Security cannot be the "initial transferee" under the minimum requirement test set forth in *Bonded Financial.*

## B.

■ CDP alleges that the Note and Agreement between Logan and Security made Security the entity for whose benefit the transfers between CDP and Logan were made. In support of its position, CDP cites *In re Bagwell*, 29 B.R. 461 (Bankr.D.Or.1983) and *In re Jameson's Foods, Inc.*, 35 B.R. 433 (Bankr.S.D.Cal. 1983). These cases can be distinguished because the transfers at issue therein were made directly from the debtors to the initial transferees. In the case *sub judice*, CDP, the debtor, transferred the funds to the Committee, who in turn deposited the money at Mercantile. The Committee then wrote a check to Logan, who deposited the money at United Jersey where it was transferred to a Chicago bank for Security. The aforementioned cases would be applicable only if CDP had transferred the money directly to Security. Since this did not occur, the appellee's cases do not demonstrate that Security was the entity for whose benefit the initial transfer was made.

The appellant correctly relies on *Bonded Financial* to show that Security was not the entity for whose benefit the initial transfer was made. The applicable part of the opinion states:

> a subsequent transferee cannot be the "entity for whose benefit" the initial transfer was made ... The paradigm "entity for whose benefit such transfer was made" is a guarantor or debtor ... someone who receives the benefit but not the money ... Someone who receives the money later on is not an "entity for whose benefit such transfer was made"; only a person who receives a benefit from the initial transfer is within this language.

838 F.2d at 895–96.

Furthermore, the facts indicate that Security eventually received the disputed funds. A party who receives the money cannot be the entity for whose benefit the initial transfer was made. *Id.*, at 896.

Finally, it should be noted that payment can be made for the benefit of a third party if that party is indicated on the check. *In re Universal Clearing House Co.*, 62 B.R. 118, 127 (Bankr.D.Utah 1986). Since neither of the checks from CDP nor from the Committee named Security, it cannot be said that the initial transfer was intended to benefit Security.

### III.

 The trustee also contends that he has proven the factors required in § 547(b):

(b) Except as provided in subsection (c) of this section, the trustee avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

11 U.S.C. § 547(b)(1). The facts show otherwise. The first factor cannot be satisfied because Security is not a creditor of CDP. This Court has previously stated that Logan, not Security, was the creditor of CDP. The § 547(b) requirement has not been proven.

### IV.

A party is entitled to summary judgment where the non-movant party has no evidence to support a dispositive issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A motion for summary judgment may also be granted where the movant party's pleadings and briefs indicate that no genuine issues of material fact exists.

The CDP, as non-moving party, alleges that material facts exist as to whether Security is an initial transferee or an entity for whose benefit the initial transaction was made according to § 550(a)(1). On the contrary this Court finds that no material issues of fact exist on these points and thereby affirms the granting of Security's motion for summary judgment.

### CONCLUSION

In accordance with the foregoing, the decision of the United States Bankruptcy Court entered on June 29, 1988 is affirmed. A separate Order will be entered herein.