In re UNIVERSITY CREEK
PLAZA, LTD., Debtor.

UNIVERSITY CREEK PLAZA, LTD.,
Appellant, Cross–Appellee,

v.

NEW YORK LIFE INSURANCE
COMPANY, Appellee, Cross–
Appellant.

No. 93–6833–CIV.
Bankruptcy No. 93–20067–BKC–SMW.

United States District Court,
S.D. Florida.

Jan. 3, 1995.

Alan J. Perlman, Schantz, Schatzman & Aaronson, P.A., Miami, FL, for appellant, cross-appellee.

Brian K. Gart and Roberto R. Pupo, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Ft. Lauderdale, FL, for appellee, cross-appellant.

### ORDER (1) AFFIRMING BANKRUPTCY COURT'S ORDER DENYING CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION AND DISMISSING CASE DATED AUGUST 24, 1993, AND (2) AFFIRMING BANKRUPTCY COURT'S ORDER ON DEBTOR'S EMERGENCY MOTIONS DATED AUGUST 27, 1993

ARONOVITZ, District Judge.

BEFORE THIS COURT is University Creek Plaza, Ltd.'s ("University") appeal from the Bankruptcy Court's Order Denying Confirmation of Debtor's Plan of Reorganization and Dismissing Case entered on August 24, 1993, and the Bankruptcy Court's Order on Debtor's Emergency Motions entered on August 27, 1993. Also before this Court is New York Life Insurance Company's ("NY Life") cross-appeal of the Bankruptcy Court's decision to overrule NY Life's Objection to the classification of claims under Debtor University's Plan. The Bankruptcy Court's decision to overrule NY Life's Objection to classification was included as part of the Bankruptcy Court's August 24th Order Denying Confirmation.[1]

On November 29, 1993, the Honorable James L. King, United States District Judge, entered an Order of Recusal in the above-styled cause and this cause was reassigned to the Honorable Jose A. Gonzalez, Jr., United States District Judge, on November 30, 1993. Thereafter, this case was reassigned to the undersigned Judge by Order of Transfer, entered on December 9, 1993.

This Court heard oral argument on this consolidated appeal on May 3, 1994. Due to the complex nature of this case including the extensive references to the record which were made by counsel at oral argument, this Court by Order entered on May 5, 1994 directed the parties to file post-hearing briefs to aid the Court in the resolution of the appeal.[2]

Accordingly, this Court has carefully considered all briefs submitted on appeal, including post-hearing briefs, oral argument of counsel, the entire record, the applicable law and is otherwise fully advised in the premises. For the following reasons, it is **ORDERED AND ADJUDGED** that the Bankruptcy Court's Order Denying Confirmation of Debtor's Plan of Reorganization and Dismissing Case entered on August 24, 1993, and the Bankruptcy Court's Order on Debtor's Emergency Motions entered on August 27, 1993, are hereby **AFFIRMED in their entirety.**

### Factual and Procedural Background

In April 1986, University and other tenants executed a promissory note in favor of NY Life for the principal amount of $12 million. When University defaulted on the note in 1992, NY Life accelerated the indebtedness under the note and subsequently filed

---

1. These appeals were consolidated by the Bankruptcy Court by Order dated October 22, 1993.

2. Specifically, this Court directed the parties to file post-hearing briefs clearly setting forth the issues on appeal, the specific references/citations to the record, case law and/or statutory authority which support the legal conclusions being espoused by the parties. The Court further stated that a second Oral Argument on the Merits of this Appeal shall be scheduled by further Order of this Court. However, upon careful review of all briefs submitted in this appeal (including post-hearing briefs), the arguments made by counsel, and the entire record, this Court finds that a second Oral Argument is not necessary for the resolution of this appeal and, therefore, shall not be scheduled.

a foreclosure action against University in the Broward Circuit Court.[3]

On October 22, 1992, a Final Summary Judgment of Foreclosure was entered in the Broward Circuit Court in favor of NY Life and provided that a public sale of the Property be held on January 12, 1993. The Property consists of a commercial shopping center known as the University Creek Plaza located in Davie, Florida. ("Property")

On January 8, 1993, two business days prior to the scheduled foreclosure sale, University filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.[4] As a result, the foreclosure sale was stayed pursuant to 11 U.S.C. § 362(a). Shortly after the petition date, University and NY Life entered into a Stipulation Regarding Use of Rents & Adequate Protection for Such Use & Deadlines For Exclusive Period and to Confirm Plan of Reorganization. ("Stipulation")

By Order dated March 19, 1993, the Bankruptcy Court approved this Stipulation but stated that if University did not confirm its Plan by June 30, 1993, NY Life would be entitled to relief from the automatic stay to sell the Property upon entry of an Order on an ex-parte basis.[5]

On April 15, 1993, University filed its Plan of Reorganization and corresponding Disclosure Statement. University then filed three amendments to the Plan on April 27, May 12, June 10, 1993, respectively, and orally (*ore tenus*) amended the Plan at the June 16, 1993 Confirmation Hearing. After the June 16th Confirmation Hearing, Judge Weaver reserved judgment on Confirmation in order to review and consider all the evidence including post-hearing memoranda of law.

At a further hearing on August 17, 1993, the Bankruptcy Court announced its decision to deny confirmation based on two objections. First, the Bankruptcy Court found that the proposed buy-out of the Winn Dixie Lease in future years affected NY Life's rights which, in turn, affected the prior stipulation between the parties. Second, the Court denied confirmation due to University's inside relationships with various entities who loaned money to University to partially fund the plan. The Court found that these transactions evidenced "self-dealing" and caused the plan to be proposed in "bad faith." The Court directed counsel for NY Life to draft the Order Denying Confirmation and on August 24, 1993, the Court entered said Order. ("Order Denying Confirmation")

Thereafter on August 24, 1993, University filed two Emergency Motions including: (1) Emergency Motion for Reconsideration of Confirmation of Debtor's Amended Plan of Reorganization, as Modified, and Order thereon, and to Reset Confirmation, or Alternatively for Stay Order Pending Appeal, and (2) Emergency Motion for Order Pursuant to Fed.R.Bankr.P. 3019 Determining that Modifications of Amended Plan of Reorganization do not Adversely Change Treatment of Any Creditor or Interest Holder. After a hearing on these two Emergency Motions, the Bankruptcy Court on August 27, 1993 denied University's Emergency Motion for Reconsideration and to Reset Confirmation, but granted that part of University's Motion which requested a stay pending appeal, provided a bond was obtained in the amount of $300,000.

3. This state court case was styled: *New York Life Insurance Company v. University Creek Plaz, Ltd., et al.*, Case No. 92–011301(13).

4. For purposes of this opinion, the terms "University" and "Debtor" are used interchangeably.

5. The Bankruptcy Court in its March 19, 1993 Order specifically ORDERED AND ADJUDGED:

3. That the Stipulation be and hereby is further modified and clarified to reflect that the "CONFIRMATION DEADLINE" referenced in the Stipulation shall not be deemed to constitute the date of a hearing to consider Confir-

mation of the Debtor's Plan of Reorganization, which hearing shall be separately scheduled by this Court, **provided, however, that in the event the Debtor does not confirm a Plan by June 30, 1993, Lender shall be entitled to complete relief from the automatic stay to sell the "Property" in the State Court Foreclosure Action as set forth in the Stipulation, upon the entry of an Order on an ex-parte basis upon the filing of an Affidavit with notice to the United States Trustee's office and counsel to the Debtor. In the event a Plan is not confirmed by June 30, 1993, the Debtor shall be deemed to agree to the entry of an Order in accordance with the above.** (emphasis added)

Said appropriate bond was obtained.[6] The Bankruptcy Court further denied University's Emergency Motion for Order Pursuant to Fed.R.Bankr.P. 3019. ("Order Denying Reconsideration")

University has appealed from the Bankruptcy Court's Order Denying Confirmation, and Order Denying Reconsideration. NY Life has cross-appealed only that part of the Order Denying Confirmation wherein the Bankruptcy Court overruled NY Life's Objection to the classification of claims under Debtor University's Plan.

### Standard of Review

■ The Court has carefully considered the issues on appeal and applied the appropriate standard of review. In accordance with Federal Rule of Bankruptcy Procedure 8013, the Bankruptcy Court's findings of fact will not be set aside unless clearly erroneous. *In re Chase & Sanborn Corp.*, 904 F.2d 588 (11th Cir.1990); *In re T & B General Contracting, Inc.*, 833 F.2d 1455 (11th Cir.1987). Equitable determinations by the Bankruptcy Court are subject to review under an abuse of discretion standard. *In re Red Carpet Corp. of Panama City Beach*, 902 F.2d 883 (11th Cir.1990). Conclusions of law are subject to *de novo* review. *In re Chase & Sanborn Corp.*, 904 F.2d at 593; *In re Sublett*, 895 F.2d 1381 (11th Cir.1990).

■ While the Bankruptcy Court's factual findings are subject to a clearly erroneous standard, that standard does not apply when determining the propriety of the Bankruptcy Judge's conclusions of law, (i.e.) determination of what law applies or determination of the ultimate legal conclusions resulting from the application of the law to the facts. Legal conclusions made by the Bankruptcy Judge may not be approved by the District Court without an independent determination. *In re Columbia Data Products, Inc.*, 99 B.R. 682, 684 (D.Md.1989), *affirmed*, 892 F.2d 26 (4th Cir.1989); *citing, Hunter Sav. Ass'n v. Baggott Law Offices Co.*, 34

B.R. 368, 374 (Bankr.S.D.Ohio 1983), *reversed on other grounds*, 750 F.2d 536 (6th Cir.1984); *In re Hollock*, 1 B.R. 212, 215 (Bankr.M.D.Pa.1979).

### Order Denying Confirmation and Dismissing Case

With respect to the Order Denying Confirmation, Appellant University argues that the Bankruptcy Court erred in finding that University's Plan was not proposed in good faith pursuant to 11 U.S.C. § 1129(a)(3).[7] University argues that the Bankruptcy Court's findings are clearly erroneous and not based on substantial evidence. University claims that the fact that GLC Farms, Inc. ("GLC") an admitted insider, contributed funds required to confirm a plan is typical with any Chapter 11 where the Debtor has no equity and such contribution is not opposed by the Bankruptcy Code.

University argues that the Court erred in prohibiting further modifications to the Plan during and after the August 17, 1993 Confirmation Hearing since the Court had previously authorized University to modify its Plan before and after the June 16, 1993 Confirmation Hearing. University claims that such earlier approval of modifications became the law of the case with respect to the procedure for later modifications.

University argues that the Court erred in prohibiting University's *ore tenus* modification proposed at the August 17, 1993 hearing. University states that the Plan was not confirmed on that date and that it had the statutory right under 11 U.S.C. § 1127(a) to modify its Plan at any time before confirmation. University argues that this includes the right to modify its Plan **even after** Bankruptcy Judge Sidney M. Weaver denied confirmation.

University asserts that the Court erred in finding that all the factors of a bad faith filing under *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir.1988) are present in

---

6. It should be noted that on December 10, 1993, this Court denied NY Life's Amended Motion to Vacate Stay. (Case # 93–1727–CIV–ARONOVITZ)

7. 11 U.S.C. § 1129(a) provides in relevant part:

The court shall confirm a plan only if all of the following requirements are met (including):
(3) The plan has been proposed in good faith and not by any means forbidden by law.

this case. (these factors are discussed later in this Opinion) University argues that the Order Denying Confirmation drafted by counsel for NY Life grossly exceeds and is inconsistent with the Bankruptcy Court's oral ruling. Moreover, University argues that the Bankruptcy Court erred in dismissing the case with prejudice due to the fact that NY Life failed to file the appropriate dismissal motion pursuant to 11 U.S.C. § 1112, the mandatory 20 day notice regarding such a hearing pursuant to Fed.R.Bankr.P. 2002(a)(5) was not satisfied, and the facts did not support dismissal of the bankruptcy. Finally, University argues that the Bankruptcy Court was biased, not impartial and predisposed to deny confirmation.

In rebuttal, NY Life argues that the Bankruptcy Court's findings with respect to the denial of confirmation and dismissal of the case are subject to an abuse of discretion standard. *Citing, Big Shanty Land Corp. v. Comer Properties, Inc.*, 61 B.R. 272, 282, n. 17 (N.D.Ga.1985) (in cases where there is substantial evidence of bad faith, the bankruptcy court should be allowed broad discretion to decide whether to deny confirmation). NY Life argues that the Court correctly determined that University's Plan failed to meet the requirements for confirming a plan under 11 U.S.C. § 1129 of the Bankruptcy Code. In particular, the Bankruptcy Court concluded that University's Plan was not fair and equitable within the meaning of Section 1129(b)(2)(A) with respect to the proposed treatment of NY Life's Class 3 Secured Claim in that it unfairly stripped NY Life of its collateral rights under loan documents ratified by prior Order of the Court and it sought to bind NY Life to a second future unknown reorganization which substantially affected NY Life's security interest.

Moreover, the Bankruptcy Court concluded that, based upon the totality of circumstances in this case, the Debtor's Plan was not proposed in good faith within the meaning of Section 1129(a)(3) of the Bankruptcy Code. NY Life argues that the Court's find-

ing of lack of good faith is supported by the evidence of record which demonstrated University's practice of self-dealing with respect to insiders, as well as University's nondisclosures.

NY Life argues that lack of good faith in proposing a plan provides grounds for dismissing the case. *Citing, In re Luchenbill*, 112 B.R. 204 (Bankr.E.D.Mich.1990); *In re Transamerica Business Corp.*, 86 B.R. 292 (Bankr.S.D.Fla.1988). NY Life further argues that the evidence of record demonstrated that all the factors for a bad faith bankruptcy filing were established in this case as set forth in *In re Phoenix Piccadilly, Ltd.*

NY Life argues that it preserved its right to argue that University's case was filed in bad faith through its Motion to Dismiss filed on May 13, 1993, and through its Amended Objection to Confirmation filed on June 14, 1993. Additionally, NY Life claims that University had adequate notice that the Bankruptcy Court could dismiss its case because the Bankruptcy Court, in its April 16, 1993 Order Setting Hearings, indicated that it reserved the right to consider dismissal of the case at the Confirmation Hearing upon request of any interested party.[8]

NY Life argues that the Order Denying Confirmation is consistent with and does not exceed the Bankruptcy Court's oral ruling of August 17, 1993. NY Life asserts that Judge Weaver was clear in his oral ruling and drafting instructions to NY Life's counsel, and NY Life's counsel complied with his drafting instructions. NY Life adds that University raised this "ghostwriting" objection in its Emergency Motion for Reconsideration, as well as at the August 27, 1993 hearing on said Motion. (See, 8/27/93 Hearing Transcript, pp. 9–11) However, this objection was overruled by virtue of Judge Weaver's Order Denying Reconsideration.

NY Life argues that no provision of 11 U.S.C. § 1127(a) authorizes University to continue amending its Plan after the Court has denied confirmation. That is, once the Court denied confirmation of the Plan, there

---

8. Specifically, the Bankruptcy Court stated:
   NOTICE IS GIVEN that at any hearing scheduled by this Order, this Court will consider dismissal of this case or its conversion to a

Chapter 7 liquidation under Section 1112(b) upon the request of any interested party made at or before the hearing.

was no viable Plan to be amended or modified. NY Life argues that no abuse of discretion has been shown for the Bankruptcy Court's refusal to allow further amendment of the Plan. Further, NY Life contends that the Judge Weaver was unbiased and impartial in denying confirmation.

■ It is clear, upon review of the transcripts from the Confirmation Hearing on June 16, 1993, and the hearing on August 17, 1993, where Judge Weaver announced his ruling to deny confirmation and dismiss the case, that Judge Weaver carefully reviewed all the evidence presented and the arguments of counsel. At the August 17th hearing, the Bankruptcy Court specifically stated:

> The Court has heard the confirmation proceedings in this case, it heard the arguments of counsel, reviewed the evidence presented, asked for a period of time to review the evidence, arguments, and also asked for a memorandum of law from each party. (8/17/93 Hearing Transcript, p. 3) I have reviewed all the evidence, I reviewed the memos of law and based upon all these combined, I have made my ruling today. (8/17/93 Hearing Transcript, p. 11)

As noted herein, the Bankruptcy Court denied confirmation of University's Plan as it found University's Plan was not fair and equitable within the meaning of 11 U.S.C. 1129(b)(2)(A).[9] While the Bankruptcy Court made no finding as to University's technical compliance with the requirements of Section 1129(b)(2), the Court stated in its Order Denying Confirmation that:

> ... the Plan is not fair and equitable with respect to the proposed treatment of New York Life's Class 3 Secured Claim because the Debtor unfairly seeks to reorganize not once but twice. Specifically, the Debtor first seeks to reorganize by cramming down New York Life with a proposed $7.8 million mortgage under the Plan as set forth in treatment for Class 3 under the

Plan. Second, the Debtor seeks the Court's approval to consummate a future reorganization of more than 55% of the income from the Property generated from the Winn Dixie Lease as part of a buyout of that Lease, the terms and consequences of which are unknown today, without the consent of New York Life.

> As testified by Mr. Gary Diamond, New York Life's feasibility expert at the Confirmation Hearing, the buyout of the Winn Dixie Lease would constitute a "further financial reorganization" because it would involve the restructuring of 55% or more of the income from the Property. (footnote omitted) The Debtor presented no evidence to demonstrate whether this second restructuring is fair and equitable as to New York Life's Class 3 Secured Claim

> ...

> There is no dispute that the terms of the buyout to which the Debtor seeks to bind New York Life in the future are unknown today. (footnote omitted) The record is also clear that the Debtor has no immediate need to strip New York Life of its right to approve any modification or buyout of the Winn Dixie Lease. The Debtor presented no evidence to suggest it had such a need or that a buyout was essential to its reorganization. Nor is there any evidence of record or provision in the Plan which purposes to account for how New York Life is compensated under the Plan for the loss of this substantial right. (Order Denying Confirmation, pp. 5–6)

The Court concluded that the proposed treatment of NY Life's Class 3 Secured Claim under the Plan unfairly stripped NY Life of its collateral rights under loan documents ratified by prior Order of the Court, and the Plan sought to bind NY Life to a second future unknown reorganization which substantially affected NY Life's security interest.[10]

---

9. 11 U.S.C. § 1129(b)(2) provides in pertinent part:

> For the purpose of this subsection, the condition that a plan be **fair and equitable** with respect to a class includes the following requirements:

> (A) With respect to a class of secured claims, the plan provides—(see statute for specific requirements)

10. The Bankruptcy Court specifically found at page 6 of its Order Denying Confirmation that:
> Also undisputed is the fact that the Assignment of Rents, which was ratified by the Debtor as

Upon careful consideration of the arguments made by the parties and a review of the entire record including all briefs submitted by the parties, University has not demonstrated to this Court that the Bankruptcy Court abused its discretion in finding that University's Plan did not meet the "fair and equitable" requirements of Section 1129(b)(2), therefore precluding confirmation. *See, Matter of D & F Const., Inc.*, 865 F.2d 673, 675 (5th Cir.1989) (a court must consider the entire plan in the context of the rights of the creditors under state law and the particular facts and circumstances when determining whether a plan is "fair and equitable").

■ This Court finds that University was on notice at the time of the June 16th Confirmation Hearing that the Winn Dixie buyout posed a problem with the confirmation of its Plan since NY Life had filed an Amended Objection to Confirmation of Debtor's Plan on that specific point. (See, C.P. # 102) Also, NY Life's feasibility expert (Gary Diamond) testified at said Confirmation Hearing that the buyout of the Winn Dixie lease represented a further financial reorganization. (6/16/93 Confirmation Hearing Transcript, pp. 117–118) Judge Weaver even advised University's counsel that University knew that the Winn Dixie buyout could derail confirmation.[11]

■ Given University's prior notice, the Bankruptcy Court certainly had discretion to prohibit University from further modifying its Plan (to remedy the Winn Dixie buyout situation and/or correct any other defects

with the Plan) during and after the August 17, 1993 hearing. The record shows that University had already modified and/or amended its Plan four times. In light of these modifications/amendments, and contrary to University's position, this Court does not read 11 U.S.C. § 1127(a) as providing University with the statutory and unlimited right to modify its Plan **even after** Judge Weaver announced his decision to deny confirmation.[12] At the Reconsideration Hearing, Judge Weaver significantly notes:

This Plan, this effort to modify it was after the Court had made its decision, and it was too late, too little too late. (8/27/93 Hearing Transcript, p. 28)

This Court therefore finds no abuse of discretion with regard to the Bankruptcy Court's decision to preclude any further modifications by University.

■ The second ground on which the Bankruptcy Court based its denial of confirmation was that University's Plan was not proposed in **good faith** within the meaning of Section 1129(a)(3) of the Bankruptcy Code, based upon the totality of circumstances in this case. 11 U.S.C. § 1129(a)(3) provides that the court shall confirm a plan only if the plan has been proposed in good faith and not by any means forbidden by law. The term "good faith" is not defined in the Bankruptcy Code. In the absence of a statutory definition, courts have held:

The "good faith" of a reorganization plan must be viewed in light of the totality of

---

part of the Cash Collateral Stipulation, prohibits the Debtor from modifying the Winn Dixie Lease without New York Life's consent. Specifically the Assignment of Rents provides, in pertinent part:

"Any ... termination, ... modification ... of a lease ... without the written consent of the mortgagee shall be null and void." (footnote omitted)

Mr. Kanai, the Debtor's principal witness, acknowledged that under the loan documents, the Debtor would need New York Life's consent to a buyout of the Winn Dixie Lease. (footnote omitted) **Based upon the foregoing, it violates all notions of fairness and equity to allow the Debtor to use this confirmation process to bind New York Life to one reorganization today and yet another second unknown and unsupervised reorganization in the future which will substantially affect New York Life's**

security interest in the Property. (emphasis added)

11. Judge Weaver specifically stated at the August 17, 1993 hearing:

Oh, Ms. Hernandez advised you in her arguments that this was a substantial problem, Mr. Perlman, so this is not the first time you have heard about it. (8/17/93 Hearing Transcript, p. 6)

12. 11 U.S.C. § 1127(a) provides:

The proponent of a plan may modify such plan at any time before confirmation, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan.

circumstances surrounding confection of the plan ... The bankruptcy judge is in the best position to assess the good faith of the parties' proposals. *Big Shanty Land Corp. v. Comer Properties, Inc.,* 61 B.R. 272, 280–81 (N.D.Ga.1985), *citing, In re Jasik,* 727 F.2d 1379, 1383 (5th Cir.1984) (quoting *Public Finance Corp. v. Freeman,* 712 F.2d 219, 221 (5th Cir.1983) (other citation omitted).

In this case, the Bankruptcy Court specifically found:

> The acts of self-dealing on the part of the Debtor and its insider creditors and the totality of circumstances in this case leave little doubt of the Debtor's lack of good faith in proposing a plan of reorganization such that the Plan cannot be confirmed. (Order Denying Confirmation, p. 7)

Moreover, in its Order Denying Confirmation, the Bankruptcy Court lists those factors/circumstances which cause the Court to ultimately determine that University lacked good faith in proposing its Plan. The Bankruptcy Court found that:

> First, it is clear that the Debtor fabricated the non-insider trade vendor claims by intentionally withholding a single month's payment to those creditors shortly before the filing of this case ...

> Second, the Debtor fabricated the unsecured claim of $75,000 of GLC, who was not initially identified as an insider in the Debtor's Schedules. (footnote omitted) ... If its insider status had not been exposed by New York Life, GLC's claim would have accounted for approximately 87% of the claims in Class 5. These facts make it clear that the Debtor was seeking to cloak the claim of an insider in order to control the voting necessary to accept the Debtor's Plan.

> Third, the Court is disturbed by the fact that the Debtor is seeking the equitable remedy of a cram down against New York Life for the benefit of the majority limited partner, Florida Pioneer, an entity which is controlled by the same individuals who control Florida Atlantic, the recipient of $300,000 of insider preferences. The evidence shows that Florida Pioneer owns more than 50% of Florida Atlantic. (footnote omitted) ...

> Furthermore, according to the testimony of Mr. Donald Carson, the principals of Florida Atlantic are the same as those individuals who control the General Partner, Florida Pioneer, and GLC, the entity purportedly funding the Plan. (footnote omitted) ...

> Mr. Carson testified that GLC was the source of the proposed funding under the Plan and that GLC would be making the proposed contingent 5% payments to unsecured creditors on behalf of Florida Pioneer. (footnote omitted) **The foregoing is disturbing, however, in light of this entity's relationship to Florida Atlantic and the fact that the Debtor failed to disclose the source of the proposed funding until the Confirmation Hearing after being pressed by the Court.** (footnote omitted) Although Mr. Don Carson stated that the monies are not from the preference monies paid to Florida Atlantic, **the Court is more persuaded by the evidence of control and the loose relationship between GLC, Florida Pioneer and Florida Atlantic that there is a level of self-dealing among these insiders which does not pass muster before this Court. (emphasis added)**

> Given the loose relationship and admitted lack of formalities between the group of companies described by Mr. Carson to include Florida Atlantic, Florida Pioneer, the General Partner, and GLC, **this Court cannot seriously accept the equity holders attempt to pass off a *prima facie* preference payment as their "new value" contribution. More importantly, these efforts look and smell like self-dealing and should be considered evidence of the Debtor's lack of good faith in proposing its Plan. (emphasis added)** (Order Denying Confirmation, pp. 7–10)

This Court finds that the Bankruptcy Court's findings with regard to those circumstances evidencing University's lack of good faith are amply supported by the record below and are not clearly erroneous. With regard to University's claim that GLC, an admitted insider, legally contributed funds

required to confirm the plan, this claim is suspect in light of the Bankruptcy Court's finding of self-dealing between GLC, Florida Pioneer and Florida Atlantic and given the finding of fabrication of claims in this case.

■ The Bankruptcy Court applied the proper standard in determining that University's petition was filed in bad faith. While the Eleventh Circuit has not established an all inclusive list of elements determinative of a bad faith filing, its decision in *In re Phoenix Piccadilly, Ltd.* is instructive. In particular, the Eleventh Circuit in *In re Phoenix Piccadilly, Ltd.*, held that:

> ... there is no particular test for determining whether a debtor has filed a petition in bad faith. Instead, the courts may consider any factors which evidence "an intent to abuse the judicial process and the purposes of the reorganization provisions" or, in particular, factors which evidence that the petition was filed "to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." *In re Phoenix Piccadilly, Ltd.*, 849 F.2d at 1394, citing, *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir.1984).

Factors sufficient to sustain a bad faith filing in *In re Phoenix Piccadilly, Ltd.* included: (1) single asset debtor, (2) few unsecured creditors whose claims are small relative to the claims of the secured creditors, (3) few employees of debtor, (4) the property is the subject of a foreclosure action as a result of arrearages on the debt, (5) debtor's financial problems involve essentially a dispute between the debtor and the secured creditors which can be resolved in the pending state court action, and (6) the timing of debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights. *Id.* at 1394–95 (other citations omitted).

These factors are clearly met in the Bankruptcy Court's Order Denying Confirmation. Specifically, the Bankruptcy Court held:

> In this case the Debtor possessed only one asset and had few non-insider unsecured creditors whose claims were microscopic relative to the primary claim holder, New York Life. In addition, the Debtor never had any employees prepetition bank accounts. Furthermore, the Debtor's principal asset was subject to a foreclosure sale scheduled for shortly before the Debtor filed its Chapter 11 petition. Given these and other facts of record, this Court is convinced that the Debtor's financial problems involve essentially a dispute between the Debtor and New York Life, its sole secured creditor, which dispute can be resolved in the pending Foreclosure Action. (Order Denying Confirmation, p. 10)

As the Bankruptcy Court applied the proper standard for a bad faith filing, this Court finds that the Bankruptcy Court did not abuse its discretion in considering University's bad faith filing as a ground for denying confirmation and dismissing the case. *In re Northwest Place, Ltd.*, 108 B.R. 809, 814 (N.D.Ga.1988) (where the bankruptcy court's determination of a bad faith filing is the product of the bankruptcy court's application of the underlying facts to the proper legal standard, such determination should only be set aside if the bankruptcy court abused its discretion).

■ Moreover, the Court correctly held that University's Plan could not meet the good faith requirement set forth in 11 U.S.C. § 1129(a)(3) since it was determined that University's petition was filed in bad faith. *In re Natural Land Corp.*, 825 F.2d 296, 298 (11th Cir.1987) (any proposal submitted by a debtor who filed his petition in bad faith would fail to meet section 1129's good faith requirement).

■ This Court finds that University was on notice that the Bankruptcy Court could dismiss University's case due to the fact the Bankruptcy Court in its April 16, 1993 Order Setting Hearings reserved the right to consider dismissal of the case at the Confirmation Hearing upon request of any interested party. (See footnote 8, *supra*.) The Court also finds that NY Life neither waived nor was estopped or precluded (as University contends) from arguing that University filed its petition in bad faith. NY Life filed a Motion to Dismiss for "cause" under Sections 1112(b)(1) and (2) on May 13, 1993. On June 14, 1993, the Bankruptcy Court denied said motion but did not state that such denial was

with prejudice. That same day (June 14), NY Life filed an Amended Objection to Confirmation setting forth different and more specific grounds for denying confirmation based in part upon a bad faith filing. Based upon the filings and the Court's rulings below, NY Life could present arguments as to University's bad faith filing at the Confirmation Hearing and University was on notice that its case could be dismissed upon request of any interested party.

■ From a complete review of the record below, University's argument that the Bankruptcy Court was biased, not impartial and predisposed to deny confirmation is wholly without merit or support. To the contrary, Judge Weaver gave the parties sufficient time to submit a Plan, workable and agreeable to the parties. The alleged comments made by Judge Weaver with regard to where the money came from to finance the plan are in fact legitimate and relevant and show no predisposition to deny University's Plan.[13] With regard to Judge Weaver's comment to University's counsel "I don't like the company you keep", said comment is not considered prejudicial since it was made after Judge Weaver announced his ruling to denying confirmation and it was made in the context of the Court's recognition that there were insiders involved in self-dealing precluding acceptance of University's Plan in good faith. (See, 8/17/93 Hearing Transcript, pp. 7–9)

Finally, this Court concludes that the Bankruptcy Court's Order Denying Confirmation is supported by the record and is consistent with and does not exceed the Bankruptcy Court's oral rulings. (See, Drafting instructions at 8/17/93 Hearing Transcript, pp. 3–4, 14, 18)

### Order Denying Reconsideration

■ As noted herein, on August 24, 1993 University filed two Emergency Motions: (1) Emergency Motion for Reconsideration of Confirmation of Debtor's Amended Plan of Reorganization, as Modified, and Order thereon, and to Reset Confirmation, or Alternatively for Stay Order Pending Appeal, and (2) Emergency Motion for Order Pursuant to Fed.R.Bankr.P. 3019 Determining that Modifications of Amended Plan of Reorganization do not Adversely Change Treatment of Any Creditor or Interest Holder. On August 27, 1993, the Bankruptcy Court held a hearing on University's two Emergency Motions. After said hearing, the Bankruptcy Court denied University's Emergency Motion for Reconsideration and to Reset Confirmation, but granted that part of University's Motion which requested a stay pending appeal, provided a bond was obtained in the amount of $300,000. Said appropriate bond was obtained. The Bankruptcy Court further denied University's Emergency Motion for Order Pursuant to Fed.R.Bankr.P. 3019. ("Order Denying Reconsideration").

With respect to the Order Denying Reconsideration, University argues that the Bankruptcy Court committed manifest errors of fact and law in not confirming University's Plan, and consequently erred in denying University's Emergency Motion for Reconsideration. University notes that along with its Emergency Motion to Reconsider, it filed modifications to the Plan to alleviate the concerns of the Bankruptcy Court. University claims that these modifications were filed in good faith and constitute newly discovered evidence to warrant reconsideration of the Order Denying Confirmation and support reversal of the Order Denying Reconsideration.

NY Life, in turn, argues that the Bankruptcy Court did not abuse its discretion and

---

13. In particular, after University's counsel could not tell the Court where the partners were getting the money to finance the Plan, Judge Weaver stated:

My concern, and with certainly no reflection on anybody, is where does the money come from to finance the plan? I'm very jealous, zealous in my efforts to avoid these courts being used as a drug cover up, laundering material, so when you say I don't know [where the partners are getting the money], I suggest we ought to know ... Now, understand my question, sir? No reflection on anybody, I just have to be and I am so very careful that none of the monies to finance the bankruptcy plan comes from laundering of drug money, and this is no reflection on anybody, just my concern based upon 30 years of experience. (6/16/93 Confirmation Hearing Transcript, pp. 11–12.)

properly denied University's Emergency Motion to Reconsider as no newly discovered evidence was presented that would change the result.

This Court finds that University's Emergency Motions consist of reargument of issues already considered by the Bankruptcy Court. Through its Emergency Motions and at the Reconsideration hearing, University argued that the Order Denying Confirmation exceeded the Bankruptcy Court's oral ruling and that the Bankruptcy Court should permit further modifications to University's Plan. With regard to University's arguments Judge Weaver stated:

> This plan, this effort to modify it was after the Court had made its decision, and it was too late, too little too late. Likewise, your action against these insiders was too little too late. So, I am going to deny it. I am going to cut you off right now because I think we've heard all this, and I am going to cut you off and deny your motion for rehearing. (8/27/93 Hearing Transcript, pp. 28–29)

This Court finds that the Bankruptcy Court was fully cognizant of the issues involved in this case and had discretion to preclude further amendment to University's Plan after it had denied confirmation. University has not shown that the Bankruptcy Court abused its discretion in entering its Order Denying Reconsideration. *See e.g., In re Tiffany Square Associates, Ltd.,* 104 B.R. 438, 442 (Bankr.M.D.Fla.1989) (motion for rehearing and to amend should be denied where movant fails to allege and/or prove any manifest error of law or fact, or any newly discovered evidence which could not have been obtained by movant at the time the matter was initially heard); Bankruptcy Rule 9023; Fed.R.Civ.P. 59(a)(2).

### Arguments on Cross–Appeal

■ The majority of the Order Denying Confirmation is in favor of NY Life, with one exception. NY Life cross-appeals one adverse ruling in the Order Denying Confirmation where the Bankruptcy Court overruled NY Life's objection to the classification of claims under University's Plan. (See Order Denying Confirmation, p. 11, ¶ 2) NY Life states that it filed this cross-appeal for the sole purpose of preserving its classification objection. NY Life states that its classification argument is a critical objection to University's Plan in the event this Court overturns the Dismissal or Reconsideration Order and the case is reopened below. NY Life points out that this Court need **not** decide the cross-appeal to affirm the Bankruptcy Court's denial of confirmation and dismissal of the case. In that this Opinion affirms the Bankruptcy Court's decisions to deny confirmation, to dismiss the case and to deny reconsideration, NY Life's cross-appeal is basically rendered moot since it relates to classification of claims under plan which was denied confirmation by the Bankruptcy Court.

■ Nevertheless, this Court has reviewed the arguments on cross-appeal since the Bankruptcy Court's decision to overrule NY Life's objection to the classification of claims under University's Plan was made a part of the Order Denying Confirmation. Also, this Court's decision on NY Life's cross-appeal is made for the benefit of a reviewing court should the parties wish to appeal this Court's decision.

■ NY Life argues that the law of this Circuit is that a Plan cannot be confirmed if the classification is designed to manipulate class voting. *Citing, In re Holywell Corp.,* 913 F.2d 873 (11th Cir.1990). The purpose of manipulating class voting is to "cram down" a plan, or get it approved. NY Life argues that University's manipulation of class voting is evident because University classified NY Life's Class 4, $3.8 million unsecured deficiency claim separate from the Class 5 claims of unsecured creditors totalling $10,500.[14] NY Life argues that the claims in Class 4 and 5 were similar and should not have been classified separately. NY Life contends that such separate classification of similar claims to manipulate voting is prohibited.

---

14. NY Life is also the holder of a Class 3 secured claim in the approximate amount of $8.5 million less: all payment made to NY Life subsequent to the Petition Date and outstanding real estate taxes resulting in an allowed secured claim of approximately $7.8 million.

University, in turn, argues that the Court was correct in allowing University to separately classify NY Life's claim. University argues that since this issue was addressed at a prior hearing on June 8, 1993 and disposed of by Order dated June 14, 1993, NY Life was estopped from relitigating this issue at the subsequent June 16th Confirmation Hearing. University argues that it complied with 11 U.S.C. § 1122 in classifying the claims in its Plan, and NY Life's claim was classified differently since it was not substantially similar to the Class 5 unsecured claims. University argues that the Bankruptcy Court was correct in overruling of NY Life's objection to classification.

Upon review, this Court finds that the Bankruptcy Court did not err in overruling NY Life's objection to classification. While this particular ruling was made without further comment, the Bankruptcy Judge is certainly in the best position to assess whether classification of claims under the University's Plan was appropriate. The record clearly reflects that NY Life had sufficient opportunity to make its classification arguments and/or present evidence with regard to University's alleged gerrymandering and/or manipulation of class voting.[15] Judge Weaver evidently unconvinced with New York Life's arguments overruled NY Life's objection to classification in the Order Denying Confirmation. This Court finds no error as to Judge Weaver's decision to overrule NY Life's objection to classification.

In summary and for the reasons set forth herein, it is **ORDERED AND ADJUDGED** that the Bankruptcy Court's Order Denying Confirmation of Debtor's Plan of Reorganization and Dismissing Case, dated August 24, 1993; and the Bankruptcy Court's Order on Debtor's Emergency Motions, dated August 27, 1993, are hereby **AFFIRMED in their entirety.**

DONE AND ORDERED.

**15.** See, NY Life's Motion for Dismissal of Chapter 11 case filed on May 13, 1993; 6/8/93 Hearing Transcript on Motion for Dismissal; NY Life's Objection to Confirmation of Debtor's Plan of Reorganization filed on June 7, 1993; NY Life's Amended Objection to Confirmation filed on June 14, 1993; and 6/16/93 Confirmation Hearing Transcript.